The HISTORIC PRESERVATION GUILD OF BAY VIEW; Nancy Rajala; Stephen W. Guittard, Plaintiffs–Appellants,

v.

James H. BURNLEY; Robert Farris; James P. Pitz, Defendants–Appellees.

No. 88–2080.

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1989.

Decided Dec. 15, 1989.

Gary R. Rentrop, Susan E. Morrison (argued), Gary R. Rentrop, P.C., Bloomfield Hills, Mich., for plaintiffs-appellants.

Janice Kittel Mann, Asst. U.S. Atty. (argued), Grand Rapids, Mich., R. Phillip Brown, Lansing, Mich., for defendants-appellees.

Before: KEITH and WELLFORD, Circuit Judges, and GILMORE *, District Judge.

PER CURIAM.

This case involves a highway widening project in the historic village of Bay View, Michigan. The plaintiffs, who challenge the widening of the highway, contend that the highway project has been unlawfully segmented in order to avoid the federal regulations governing highway construction in historic areas. The plaintiffs have sought to enjoin the construction and, ultimately, to have the highway project remanded to the federal government for further environmental study. We must decide whether the highway construction is indeed a federal project and thus subject to federal environmental construction guidelines. The district court granted summary judgment for the defendants on October 27, 1988, on the ground that the project at issue was not federal in character.

The State of Michigan proposed widening of U.S. Highway 31 as it proceeds through Bay View, Michigan, from two lanes to three lanes. The plaintiffs, the Historic Preservation Guild of Bay View (the Guild), argued against the project on the ground that the addition of a third lane, to be used for left-hand turns, would make it much more difficult to cross the street due to heavy traffic, during the summer tourist season particularly, and that the addition of the third lane would separate the sections of Bay View on either side of the road, destroying the continuity and character of the historic community. The principal defendants are James Burnley, Secretary of the United States Department of Transportation (at the time of the suit) (DOT), and James P. Pitz, Director of the Michigan Department of Transportation (MDOT). Defendants assert that the improvement would not substantially widen the cross-section of the highway from curb-to-curb. It is undisputed, however, that the project would move the road closer to certain historic cottages in the National Historic Landmark District.

Bay View was designated in 1988 as a National Historic Landmark District by the United States Department of the Interior. It is one of only sixteen historic landmarks in the State of Michigan. Much of Bay View's appeal stems from its status as "one of the last remaining examples of two uniquely American community forms, the Methodist Camp Meeting and the Independent Chautauqua." There is testimony in the record that Bay View is one of the finest extant examples of this type of community, primarily because its original design is so well preserved. The community contains 440 cottages, 100 of which were built in the late 1870s, and the remainder of which were built between 1880 and 1900.

The strength of the plaintiffs' argument depends primarily upon the question of whether the highway project can be characterized as federally funded. The history of federal funding for this project is some-

---

* The Honorable Horace W. Gilmore, United States District Court for the Eastern District of Michigan, sitting by designation.

what confusing, but the district court made extensive and detailed findings on this question. Essentially, the plaintiffs contend that federal funding was used to widen segments of U.S. Highway 31 on either side of Bay View, and that the segment in question cannot be separated or segmented from the parts that did have federal funding. The defendants admit only that federal funds were employed to widen a segment of the road from Bear Creek in Petoskey, Michigan, to the western boundary of Bay View. The segment of road at issue in this case runs from the intersection of U.S. Highway 31 and Michigan Highway 119 (M–119) on the east side of Bay View to Petoskey on the west.

For planning and construction purposes, the State of Michigan has separated this 2.8 mile stretch of U.S. Highway 31 into six segments. Segment One runs from the intersection of U.S. Highway 31 and U.S. Highway 131 to Beaubiean Avenue in Petoskey. This segment has *not* been widened. Segment Two, a two-lane portion of U.S. Highway 31 running through the town of Petoskey, was constructed using federal funds in 1962. This segment ends one-half mile from Bay View's western border. Segment Three is the portion of U.S. Highway 31 running between Stuart and Beaubiean Avenues in Petoskey. This segment was widened in 1979, using only state funds. Segment Four runs through Bay View to Division Road, the eastern border of Bay View. Segments Five and Six run from Division Road to M–119 on the east side of Bay View. Segments Five and Six were widened to four and five lanes, respectively, in 1985 using federal funds.[1]

The plaintiffs sought initially and still seek injunctive and declaratory relief for alleged violations of a number of federal statutes and administrative regulations. They filed suit for injunctive and declaratory relief on July 18, 1988. They ultimately want the project remanded to the United States Department of Transportation (DOT) for further study and review consistent with applicable statutes and regula-

tions, and to place the project back into its status before certain construction and widening was permitted. The plaintiffs allege violations of the following federal statutes and regulations: One, section 4(f) of the Transportation Act, 49 U.S.C.App. § 303 and 23 U.S.C. § 138, which provides that the DOT will not approve any project requiring the use of an historic site unless, "(i) there is no prudent and feasible alternative to the use of such land, and (ii) such program includes all possible planning to minimize harm to such historic site resulting from such use." Plaintiffs argue that an acceptable alternative is to maintain and improve the existing two-lane road. Two, Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f, provides that the head of any federal agency "having direct or indirect jurisdiction over a proposed federal or federally-assisted undertaking," shall, prior to approving the use of any federal funds, "take into account the effect of the undertaking on any site that is included in the National Register" and "shall afford the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to such undertaking." Three, Section 110(f) of the National Historic Preservation Act, 16 U.S.C. § 470h–2(f), provides that, prior to approving any federal undertaking affecting a national historic landmark, "the head of the responsible federal agency shall, to the maximum extent possible, undertake such planning and actions as may be necessary to minimize harm to such landmark and shall afford the Advisory Council a reasonable opportunity to comment on the undertaking." Plaintiffs allege that the defendants failed to afford the Advisory Council a reasonable opportunity to comment. Four, Section 102(2)(C) of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(2)(C) and (E), requires the filing of an Environmental Impact Statement consistent with the requirements of federal law. Five, 23 U.S.C. § 128 and 23 C.F.R. § 790 require that a certification be re-

---

1. Attached as Exhibits 1A and 1B are maps setting out the location of the highway section in dispute.

ceived from MDOT indicating that public hearings were held to consider the social, economic, and environmental impacts of such a project. Six, 23 C.F.R. § 772 requires the DOT to determine and analyze expected traffic and construction noise resulting from such construction projects.

The statutes and regulations allegedly violated by the defendants obviously place restrictions upon federal projects for road construction. If Michigan's plan to widen the road through Bay View is a federal project, then the state and federal agencies must comply with the statutory requirements discussed above. If, however, the project is a state project, then the requirements of federal law are not required to be met. It seems clear from the record that "federal requirements have not been met with regard to this project," as found by the district court.

Following the decision by the district court denying plaintiffs' motion for a temporary restraining order and preliminary injunctive relief and granting defendants' motions for summary judgment, the district court also denied a stay or injunction pending appeal to this court. On November 10, 1988, a panel of this court denied plaintiffs' request for an injunction pending appeal, but granted plaintiffs' request for an expedited hearing. Construction on the widening project then proceeded. On May 1, 1989, however, a panel of this court granted plaintiffs' subsequent motion to stay or enjoin further construction of the disputed portion of the highway pending a hearing on the merits of the appeal. After further consideration of briefs and evidentiary submissions by the parties relative to the status of the project and the effect of our May 1, 1989 stay, we entered another order on May 12, 1989, set out hereafter in pertinent part:

> Defendants have ceased construction in progress on said highway, although plaintiffs have apparently failed to post the $25,000 bond required as a condition for such stay. Defendants have submitted an emergency motion to dissolve the stay, or for immediate oral argument and/or for requirement of an additional substantial bond to provide for damages claimed as a consequence of the stay. Defendants' motion has been accompanied by exhibits, affidavits and a showing indicating the basis for the immediate relief sought.

> Plaintiffs have responded to the motion in opposition to the lifting of the stay. They have also requested that the bond requirement be reduced, and have apparently failed to post the $25,000 bond ordered.

> The court has carefully considered the motion for dissolution and the submissions of all parties, and has concluded that the stay order of May 1, 1989 was improvidently issued. The court is persuaded therefore that justice requires that said stay be immediately dissolved.

> Lifting of the stay renders moot the controversy concerning bond. Hearing on the merits of this appeal remains scheduled for June 16, 1989.

Substantial construction had taken place on the highway project in question by May of 1989, and in the view of the court, further disruption and delay entailed danger to the travelling public, additional substantial expense, and was apparently opposed by a substantial number of the property owners as well as the Bay View community itself. Substantial progress on the road project at Bay View had taken place at the time of the scheduled hearing.

Plaintiffs contend that the Bay View segment must be viewed as one segment of a larger federal project. They note that in 1977 MDOT proposed widening the two-lane road from Petoskey to M–119, including the Bay View segment, as a single project. After a public hearing in Bay View, however, MDOT dropped that proposal. Segments Five and Six were widened to four and five lanes in 1985 using federal funds. In connection with this project, the Federal Highway Administration (FHWA) approved an environmental assessment that included a portion of road inside Bay View. The portion involved was only one block long and was there "for tapering purposes." MDOT approached the Bay View Association, a group of the

property owners, in August 1987 to discuss widening proposals. The portion of U.S. Highway 31 through Bay View was in serious need of maintenance at the time. The parties agree that the road was in bad condition and had significant drainage problems, as it was constituted at the time of suit.

The Bay View Association's Board of Trustees and membership eventually agreed to a three-lane project, on the condition that MDOT would agree to forego *future* widening of the road. Plaintiffs argue that, despite this assurance from MDOT, there is still MDOT consideration of *future* widening of the road to four lanes. The plaintiffs also note that the Michigan Bureau of History opposes widening the road through Bay View on the ground that "any widening of U.S. 31 through the district would adversely affect Bay View." Thus, the Michigan state government itself is somewhat divided concerning this controversy.

William Penn Mott, Jr., Director of the National Park Service, also agrees with plaintiffs' view. In a letter to MDOT dated August 17, 1987, Mott stated: "This project appears to be an example of using federal funding to assist in construction of one segment and using only state funding to construct another, adjacent section in order to avoid federal environmental requirements for the state-funded section." This view is also supported by an affidavit of the plaintiffs' expert, Dr. William Taylor, Chairman of the Department of Civil and Environmental Engineering of the State of Michigan.

The defendants strongly contest the plaintiffs' characterization of this project as a federal project. While the federal defendants have taken no position on the plaintiffs' motion for an injunction, they do insist that the project to widen U.S. Highway 31 through Bay View is not a federal project. The state defendants argue that the numerous studies conducted prior to adoption of the plan in issue were not funded by any federal monies. They point to the fact that the 1979 widening of Segment Three was accomplished with only state funds. The FHWA has indicated to MDOT that it will not fund or approve the proposed three-lane widening of the Bay View segment since it does not meet federal capacity regulations. The state defendants, therefore, stress that no federal funds have been or will be used in connection with the Bay View segment. It should be emphasized that FHWA did not deny funding based upon environmental or historical concerns, but rather because the project did not meet federal capacity requirements and because the FHWA preferred a *four-lane* alternative.

In an affidavit submitted by the defendants, G. Robert Adams, Deputy Director of the Bureau of Transportation Planning of MDOT, stated that MDOT has no intention to pursue federal funding since that would be "contrary to its intent to limit the intrusion of U.S. 31 and pursue a solution mutually agreeable to both the Bay View Association and MDOT." Adams also maintains that the Bay View segment is not a part of a larger federal project segmented only for the purpose of avoiding federal requirements. He contends that the various segments connect logical termini. According to Adams, Segment Three widens the road through Petoskey to accommodate local commercial and hospital traffic and that Segment Four is logical because it connects two already widened segments. Segment Five, he argues, is logical because it runs from Division Road, "a major north-south artery for local traffic turning off U.S. 31 in either direction." Finally, Adams states that Segment Six is logical because it runs from the end of Segment Five to M–119.

The defendants' motion for summary judgment was grounded on the premise that the construction project in question is not a federal project and, therefore, is not subject to federal statutes and regulations. The district court engaged in a lengthy analysis to determine whether the plaintiffs' evidence was sufficient to raise a material issue of fact as to whether the project entailed federal action. It is argued by defendants that Judge Enslen's ruling was not dependent upon disputed factual questions, but rather turned upon

his determination of a lack of federal character in this highway construction project. After determining that the project at issue was not a federal project, the court granted the defendants' motion for summary judgment because the federal statutes and regulations on which they relied were inapplicable. The standard of review for a summary judgment motion is whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Among other findings, the district court found that "FHWA did not deny funding based upon the environmental or historic aspects of the project but rather because it did not meet federal safety requirements and because FHWA preferred a four-lane alternative."

The district judge also found that the "MDOT project would move the roadway closer to the cottages on Woodland Avenue and could have an adverse impact in terms of the increased noise, increased tourism, which is apparently unwanted here and just a general disruption.... [W]idening would also further isolate cottages on the south side of the road from the lakeshore...."

The court goes on to find: "MDOT is putting in a cross-walk.... [I]t is clear that once the road is improved it will never be returned to its present condition," and then added:

> [I]t is inaccurate to say that the widening of U.S. 31 from Petoskey to M–119 is primarily federally funded; only the portion of the road west of Bay View was widened using federal funds. The portions in Petoskey were widened using state funds. Segments Five and Six may have ... made the current Bay View widening more likely, but that is insufficient to establish federal action.

Judge Enslen also found the fact that Segment Two was built with federal funds to be unpersuasive because it was built in 1962, more than 25 years ago. The court was:

persuaded by Mr. Adams' affidavit indicating that Segments Three, Five and Six each have an independent significance: Segment Three serves the commercial area for Petoskey, while Segments Five and Six serve the communities west of Bay View and travelers turning off M–119 and continuing on in either direction. Moreover Segment Four has an independent significance.

He determined also segmentation which occurred provided no evidence of an intent to evade federal law or regulations as was indicated in the cases relied upon by plaintiffs.

The district court then stated: "[P]laintiffs have had the consideration they now seek—the administrative processes mandated by NEPA, and the other statutes, took place in 1985 and concluded that Segments Five and Six, without the extension of Bay View, were logical segments and met the other requirements of federal laws." He concluded that approval of a portion of Segment Four does not make the present project a federal project because that portion of Segment Four was dropped from the 1985 widening as a result of compliance with the very same statutes plaintiffs now seek to enforce. The district court finally found, as an ultimate fact: "I find, therefore, that plaintiffs have failed to establish a substantial likelihood that this project is federal in character."

■ This absence of federal funding is not necessarily dispositive in determining whether a highway project is imbued with a federal character. *Hawthorn Envtl. Preservation Ass'n v. Coleman,* 417 F.Supp. 1091, 1099 (N.D.Ga.1976), *aff'd,* 551 F.2d 1055 (5th Cir.1977). The absence of federal funding may not excuse noncompliance with federal laws if this highway project at issue is found to be segments of an overall federal construction project. *Id.* On the other hand, "[f]ederal action is typically present only when a project is wholly or partly federally funded." *River v. Richmond Metropolitan Auth.,* 359 F.Supp. 611, 628 (E.D.Va.), *aff'd,* 481 F.2d 1280 (1973). The fact that a project has been designed in order to preserve the options of federal funding in the

future is not enough, standing alone, to make it a federal project. *Atlanta Coalition on the Transp. Crisis v. Atlanta Regional Comm'n*, 599 F.2d 1333, 1347 (5th Cir.1979).

The *Hawthorn* court listed several factors to be used in determining whether a project is a federal or a state project:

> The proper inquiry involves a balancing of several factors, including the question of whether the segmented portion is a mere extension of a federal road, or connective link; whether, even if it is an extension or connection between two federal roads, it nevertheless has independent utility; whether the segment has logical termini; and whether the segment serves primarily local needs.

417 F.Supp. at 1100. The issue is whether the project segment "has independent justification or whether construction of this span is dependent upon construction of the entire highway." *Citizens for Balanced Environment and Transp., Inc. v. Volpe*, 376 F.Supp. 806, 813 (D.Conn.1974).

In *Named Individual Members of the San Antonio Conservation Society v. Texas Highway Dep't*, 446 F.2d 1013 (5th Cir. 1971), the court found that Texas had impermissibly segmented a highway project running through park lands in order to evade federal environmental regulations concerning the use of such lands for highway projects. It was deemed significant that segments of highway on both sides of the park lands had been constructed with federal funds. 446 F.2d at 1017. In *Scottsdale Mall v. State of Indiana*, 549 F.2d 484 (7th Cir.1977), *cert. denied*, 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978) a case involving the construction of a 28–mile bypass around South Bend, Indiana, the project was programmed to be constructed as a federally-funded project in four segments. The first segment ran through the plaintiff shopping mall's parking lot, eliminating many parking spaces, and making future expansion of the shopping mall impossible. After the plaintiff filed suit and obtained a preliminary injunction, the state announced its intention to build this segment using only state funds.

Since the entire project had been planned in accordance with federal programming and procedural requirements, and had received design approval from the Department of Transportation in addition to some federal funds for preliminary engineering studies, the court concluded that the project was a federal project, and was therefore subject to the requirements of the National Environmental Policy Act. 549 F.2d at 489.

Similarly, in *Sierra Club v. Volpe*, 351 F.Supp. 1002 (N.D.Cal.1972), there was a switch to state funds only after the issuance of a temporary restraining order. The court stated:

> Waiver of federal aid by the state, acquiesced in by the federal agency, at the last minute for a project, which has otherwise been long treated as a federal aid project should not be made a ground for disclaiming the federal nature of the project where it appears that the purpose is to avoid compliance with federal statutory environmental regulations.

351 F.Supp. at 1007.

*River v. Richmond Metropolitan Auth.*, 359 F.Supp. 611 (E.D.Va.1973), was concerned with a situation somewhat similar to the facts in this case. The project was initially designed as a state and local project, with funding through local bond issues. Because of increased construction costs due to inflation, the agency responsible for building the roads sought federal assistance. The plaintiffs claimed that the road destroyed a historically significant series of canal locks, and the court set out factors to be taken into account:

> In order to determine, therefore, when a group of segments should be classified as a single project for purposes of federal law, a court must look to a multitude of factors, including the manner in which the roads were planned, their geographic locations, and the utility of each in the absence of the other. Any acts of the defendants that suggest that they may have decided to treat the roads separately in order to avoid the requirements of federal law will weigh very heavily in support of the project splitting theory.... [I]f ... the two highways each

have such little value in their own right that their separate construction could be considered arbitrary or irrational, the court will find them to be a single project.

*Id.* at 635. The Richmond, Virginia court found that the projects were separate rather than a single project since the two roads each served distinct purposes: one provided commuter access between residential areas to the west of the city, while the other connected two highways and provided access to a residential area north of the city. The court also found that, even if the project was a single project, it was not federal in character because there was no federal participation in the planning stages and federal funds would not be available since the roads were tollways, which the federal government will not fund. *See also Bennett v. Taylor,* 505 F.Supp. 800, 808 (M.D.La.1980) (finding no federal project where various segments had independent significance, some serving metropolitan Baton Rouge, while others served surrounding rural areas).

DOT has promulgated regulations attempting to define a logical project segment. 23 C.F.R. § 771.111(f) provides that projects reviewed by the DOT should have the following characteristics:

(1) Connect logical termini and be of sufficient length to address environmental matters on a broad scope;

(2) Have independent utility or independent significance, that is to say, be usable and be a reasonable expenditure even if no additional transportation improvements in the area are made; and

(3) Not restrict consideration of alternatives for other reasonably foreseeable transportation improvements.

23 C.F.R. § 771.111(f)(1)–(3).

■ Based on these regulations and the cases discussed above, the district judge found that the plaintiffs had failed to show a substantial likelihood of success on the merits of their argument that the Bay View Project is federal in character. Many of the equitable concerns involved in this case, the public interest in preserving historic areas and the potential of serious, even irreparable, harm to the interests of the plaintiffs, are extremely close questions.

We are persuaded that the plaintiffs have failed to show that the project to widen U.S. Highway 31 from Petoskey to M–119 is *primarily* federally funded. The portions in Petoskey were widened solely with state funds. Although the widening of Segments Five and Six may have made the current Bay View widening more likely to occur, under the several factors discussed in the *River v. Richmond Auth.* case, we believe that the totality of the circumstances was insufficient to establish federal action. *See* 359 F.Supp. at 635. Since the project at issue in this case is relatively short, the district court was not in error in concluding that a segment built over twenty-five years ago did not in and of itself lend a federal character to the more recent segment.

As heretofore indicated, the issues here are complex and difficult. The highway segment has now been completed but it could or may be conformed to the requirements of federal law if deemed necessary, or even restored to its former configuration only at very considerable expense and inconvenience. We are mindful and concerned about serious ramifications of the action taken with respect to a special historical environment, a significant national landmark.

■ We express concern in this type of controversy that the district court granted summary judgment, particularly to that aspect of its holding that the plaintiffs "failed to establish a substantial likelihood that the project is federal in character." Insofar as plaintiffs were seeking extraordinary relief by way of an injunction, it was proper for the district court to determine that plaintiffs had failed to establish a likelihood of success on the merits. Plaintiffs also sought a declaratory judgment in this case that the highway project in question was a federal project, and the fact that plaintiffs failed to establish a right for injunctive relief did not preclude an ultimate declaratory judgment that the highway, or the segment at issue, was a federal

project requiring compliance with federal law and regulations.

■ As to the first aspect of plaintiffs' complaint for injunctive relief, we are satisfied that no error has been demonstrated in the district court's initial denial of *injunctive* relief. As to the second aspect, the decision on the merits granting defendants' motion for summary judgment on the question as to whether defendants' actions were "unlawful and contrary to law," we find it necessary to consider in further detail the action of the district court.

Defendant MDOT's motion for summary judgment was based on its contention, as a matter of law, under the pertinent facts as developed, that the "construction project in question is a state project, 100% funded with state funds," and that the "project does not involve unlawful segmentation." The state maintained that there was "no dispute as to the material facts." This position was supported by a number of affidavits of state officials.

The federal defendants' motion for summary judgment, also based on an assertion that "there is no material dispute of facts," claimed simply that they were "entitled to judgment as a matter of law." The division administration of the FHWA, by affidavit, asserted that the "proposed improvement ... is an independent state action and the State has never formally requested Federal-aid participation...."

Defendants' motion for summary judgment required that " 'inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion'." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Plaintiffs, in response, had to show whether a "rational trier of fact [could] find for the non-moving party ..." or "that there is a *'genuine issue for trial'*." *Matsushita*, 475 U.S. at

587, 106 S.Ct. at 1356; *see* Federal Rule Civil Procedure 56(e).

■ While recent Supreme Court authority encourages the granting of summary judgment motions more than was formerly indicated, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), we believe an examination of the issues of fact relating to segmentation based upon conflicting affidavits would indicate that there was a serious question about existence of genuine issue of material fact as to whether the project segment in question at Bay View was entirely a state project in light of prevailing authority, even that relied upon by the district court. The court in *Richmond Metropolitan Authority* indicated that in this type of environmental dispute involving impact of a project upon historic sites, "a court *must* look to a *multitude* of factors," including manner of planning, geographic location, and whether segmentation of a project at least partially involved in federal planning or funding is designed "to avoid the requirements of federal law...." 359 F.Supp. at 635 (emphasis added). In *Hawthorn Envtl. Preservation Ass'n v. Coleman*, 417 F.Supp. 1091, the court considered also the "independent utility," "independent significance," and "logical termini" tests in a highway segmentation case. 417 F.Supp. at 1099–1100.[2] The *Hawthorn* court concluded, after examining competing authorities cited by the parties, that in a segmentation dispute, "each case must be decided on its own merits." *Id.* at 1100. We are in agreement with this latter summation.

After careful reflection, we believe the plaintiffs in this case should have been afforded an opportunity to depose affiants to probe into the factors and tests indicated. The district court itself stated some of the reasons for a careful decision because of the following circumstances:

---

**2.** A significant factor in *Hawthorn* also was whether the segment in question "serves primar-

ily local needs." 417 F.Supp. at 1100.

1. "Defendants admit that widening the road would have an impact on the historic nature of the community."

2. "Preserving historic landmarks is more important, in the long run, for society than improving the traffic flow."

3. "People can put up with a little delay and inconvenience in order to preserve a unique historic district."

4. "I think the plaintiffs win on the public interest factor."

5. "While it is possible to view the project as a single project, it is equally possible to view the various segments as separate projects. It appears that the widening projects were originally conceived as a single project."

The district court, however, concluded that the "original plan was developed using state funds, state funds were used to widen the road in Petoskey, and will be used on the Bay View project." He also found that the segmentation which occurred did not indicate an intent to evade federal law; it was "never formally submitted to the federal agencies for funding approval ... [and] never received FHWA location or design approval...." Indeed, it was "ineligible for federal funds, if such funds were sought...." He found that "the evidence shows that MDOT gave up on federal funds because the federal government was less willing to respond to local opposition than was MDOT." Thus, it was "a state project from its inception." The district court conceded, however, that there was "some evidence to the contrary."

There has now been a completion of the project in question. Impact on Bay View, in light of all the preexisting circumstances and controversy, may now be more evident. The controversy in this case is a matter of public interest, and the district court has indicated that if this were the only consideration, plaintiffs might prevail. At the same time, it appears to be undisputed that a majority of the Bay View property owners approved the project in question after discussion and meetings with MDOT in 1987, and plaintiffs were fully advised of the plans by the state for redesign of the segment for many months before bringing

this action to challenge it. It is also undisputed that the preexisting storm sewer system along Highway 31 in Bay View "was in bad condition and under size" causing "flooding" and deterioration (affidavit of Leslie Jedhaues, Michigan design engineer), and it seems clear that the redesign expansion was slight, although existing alignment was flattened, the storm sewer expanded. There was also evidence that environmental studies indicated that this project would "not result in measurable increase in noise or air pollution," and environmental impact studies considered a number of alternatives, none of which were deemed viable or as feasible as the one chosen.

Dr. Taylor, plaintiffs' expert, challenged none of the above facts, except possible alternatives, but took issue with defendants' affiant, Adams, in that he concluded that the plan with regard to the Bay View segment was "part of a larger federal project," which was "eligible for federal funding." The district court was not in error, however, in determining that the specific segment in question was not eligible for federal highway funding because it was less than four lanes. Taylor also disagreed with Adams that records indicated to him that FHWA had approved "the Environmental Assessment" for a one block portion of the 1984 project before the segment extending into Bay View was deleted due to objection by the State Preservation Officer. Again, taking this as true, we see no basis for this constituting a genuine issue of material fact as to whether the highway segment in question was, or was not, a federal project. Dr. Taylor's affidavit indicated that Segment Three did not connect logical termini because Division Street, the "western boundary of Bay View," was not a "logical terminus at the east end" and a major crossroad, and he indicated his reasons for this view. He was also of the opinion that none of the three segments extending either direction from and including Bay View were "long enough to address environmental matters on a broad scope."

■ While, as indicated, it is a very close question, we are not persuaded that the district court, under all the circumstances, committed error in granting summary judgment, although plaintiffs should have been afforded more opportunity to develop proof. But even if it was error to grant summary judgment, we believe that in light of the completion of the project, we would find the error to be harmless subject to consideration by the MDOT of careful procedures undertaken that lessen the adverse impact, if any, upon Bay View as a National Historic Landmark. The state represented, through its agents,[3] that

> [I]mprovements to this section of US–31 do not restrict consideration of alternatives for other reasonably foreseeable transportation improvements.... Studies of a US–31 beltway around the Petoskey/Bay View area or other possible long-range solutions to area transportation problems, *are underway* and *will continue* regardless of improvements to existing M–31 through Bay View.

(Emphasis added).

We AFFIRM the district court, despite the reservations concerning summary judgment, in light of the totality of the circumstances involved including the completion of the project in question. We do this with the understanding that no further widening of the questioned Bay View segment will take place without meeting federal environmental standards as they relate to a National Historic Landmark. Our decision is made without prejudice to the rights of plaintiffs (or others) to seek redress or modification of the highway project at issue if serious adverse impact may be demonstrated on the Bay View Landmark by reason of construction and/or maintenance of this project.

**3.** Gerald Martin, Transportation Engineer of MDOT. J/A 140.

EXHIBIT 1A

EXHIBIT NO. 8
AREA HISTORIC DISTRICTS

(R. 28: Response by Defendant Pitz in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Exhibit 1 attached thereto, State EIS at page 30)

EXHIBIT 1B

(R. 28: Exhibit 1, State EIS at 2)

**EXHIBIT NO. 2
PETOSKEY AREA**