**Ruth Ann ENOS, Plaintiff,**

v.

**J.C. PENNEY COMPANY, Defendant.**

**No. G89–40047.**

United States District Court,
W.D. Michigan.

Sept. 21, 1990.

Charles F. Ammeson, Troff, Petzke & Ammeson, St. Joseph, Mich., for plaintiff.

Thomas A. Hoffman, David A. Rhem, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., Nicholas A. O'Kelly, J.C. Penney Co., Inc., Dallas, Tex., for defendant.

OPINION

ENSLEN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Defendant, J.C. Penney Company, Inc. ("Penney"), brings it motion pursuant to Federal Rule of Civil Procedure 56(b). The instant action was filed in Berrien County in December of 1988, and properly removed to this Court by the defendant in January of 1989 on the basis of diversity jurisdiction. The action is a wrongful discharge action based upon a theory of an implied contract of continued employment.

## FACTS

Plaintiff, Ruth Ann Enos, was hired by Penney in October 1979. She admits that she never received any contract of employment and was free to leave her position at any time. Plaintiff's Brief in Opposition at 3. During the course of her employment, Ms. Enos became eligible for various benefits offered by Penney, such as pension, profit sharing, sick pay and paid vacation.

In February of 1988, as in previous years, Penney furnished Ms. Enos with a vacation request form on which Ms. Enos was to designate her first and second choices for vacation dates that year. A response was due on April 15, 1988. Plaintiff failed to respond to this form. On May 11, 1988, Penney furnished Ms. Enos with a second vacation request form noting that it was "necessary to crystalize times for vacations on May 1st" and requesting that employees work closely with their immediate supervisors "for vacation weeks that are open" and submit their vacation requests immediately. Defendant's Exhibit ("Ex.") K. Prior to this second request, Ms. Enos had been asked on numerous occasions by James Campbell, the store manager, for her vacation schedule. Campbell Affidavit ("Aff.") ¶ 15. On or about June 4, 1988, Ms. Enos submitted her vacation request form, requesting a three week vacation from July 17 to August 6, 1988. Ms. Enos indicated that she had no second choice for vacation dates. Perceiving a conflict with other vacation requests due in part to plaintiff's untimely submission, Mr. Campbell refused to grant Ms. Enos' vacation request. Mr. Campbell informed Ms. Enos that her vacation request had been denied, and Ms. Enos insisted that she be given those three weeks for vacation. In an effort to accommodate Ms. Enos, Mr. Campbell and Ms. Betty Omo, personnel specialist, went back to employees who had submitted timely vacation requests for the same period and attempted to rearrange those schedules to accommodate Ms. Enos. Campbell Aff. ¶¶ 20, 21. As a result, Mr. Campbell was able to approve two of the three weeks Ms. Enos had requested, July 24–August 6, 1988.

Plaintiff insisted she also be given the week of July 16–24, and she was advised by Mr. Campbell that if "she did not report for work as scheduled the week of July 16, 1988, without good cause, she would be terminated." Campbell Aff ¶ 23, Enos Deposition ("Depo.") at 71–75.

On July 12, 1988, Ms. Enos visited her family physician, Dr. John Proos and was given a medical slip which stated: "No work 16 July til [sic] 24 July[.] Diagnosis: severe situational anxiety." Defendant's Ex. I. Dr. Proos made no physical examination of Ms. Enos, "other than [a] general observation." Proos Dep. at 11. Dr. Proos stated that Ms. Enos told him she was under extreme anxiety, and that she wanted to take her vacation with her family to California. He also stated that Ms. Enos told him that she had developed "a headache, numbness in the arm, extreme anxiety ... was unable to drive, was nauseated, and [ ] was barely able to work at present." Proos Dep. at 13. Nevertheless, Ms. Enos testified in her deposition that she drove herself to and from the doctor's office that day and drove to work the rest of that week. Enos Dep. at 98, 105, 106, 153. Ms. Enos reported to work for the remaining three days of that week following her visit to the doctor. On the afternoon of Friday, July 15, 1988, not having discussed her doctor's visit and medical slip with anyone at Penney, Ms. Enos left the medical slip at the reception desk and went home. Enos Dep. at 110–112. After Ms. Enos left the store, Ms. Omo, the personnel specialist, learned of the medical slip for the first time and contacted Ms. Enos at her house to inquire about the nature of her sick leave. Ms. Enos replied that she was going to California. Enos Dep. at 116.

Defendant asserts that upon returning from California, Ms. Enos went to Penney and was advised by the store manager that she had been terminated for job abandonment. Plaintiff denies that the store manager advised her that she had been terminated. She states that "until this litigation, J.C. Penney Company has always taken the position that plaintiff quit." Opposition Brief at 5.

## STANDARD

*Motion for Summary Judgment*

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "no genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'* " *Historic Preservation,* 896 F.2d at 993 (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and heartily supported, recent Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation,* 896 F.2d at 993 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale,* 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

## DISCUSSION

Defendant argues that Counts I and IV of plaintiff's complaint, alleging breach of her employment contract and retaliation, be dismissed. Plaintiff agrees, and indicates in her opposition brief that she "has agreed to dismiss the first and fourth counts of her complaint." Opposition Brief at 5. Accordingly, the Court need not address Counts I and IV and they are dismissed.

The remaining Counts, II and III of plaintiff's complaint, allege a breach of employment contract. The issue to be decided by this Court on this motion is whether any genuine question of material fact exists as to whether there was an implied contract of employment between Ms. Enos and Penney' such that Ms. Enos could only be terminated for cause.

An employer's obligation to discharge an employee only for cause, or only after following certain procedures, is not an incident of every employment contract. Rather, it is an obligation "based on the agreement of the parties [and] not an obligation imposed on the employer by law." *Valentine v. General American Credit, Inc.,* 420 Mich. 256, 259, 362 N.W.2d 628 (1984). In *Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), the Michigan Supreme Court held that "a provision of an employment contract providing that an employee

shall not be discharged except for cause is legally enforceable ...," and that "... such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." *Id.* at 598, 292 N.W.2d 880; *Vollrath v. Georgia–Pacific Corp.*, 899 F.2d 533, 535 (6th Cir.1990). Thus, statements of policy contained in, for example, an employee handbook may create a legitimate expectation on the employee's part that she or he will be discharged for cause only, or only after certain procedures have been followed. *Toussaint*, 408 Mich. at 613–14, 292 N.W.2d 880. However, employers can make known to their employees that personnel policies are subject to unilateral changes by their employer. "Employees would then have no legitimate expectation that any particular policy will continue to remain in force." *Id.* at 619, 292 N.W.2d 880. Further, *Toussaint* did not abolish the common law rule that employment contracts for an indefinite term may be terminated by either party "at any time for any, or no, reason." *Valentine*, 420 Mich. at 258–59, 362 N.W.2d 628. Rather, *Toussaint* held "... only that an employer's express agreement to terminate for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." *Toussaint*, 408 Mich. at 610, 292 N.W.2d 880.

■ An employee's expectation that she or he will be discharged only for cause, or that certain procedures will precede a discharge, must be a legitimate one. It must arise from statements of policy by the employer. *Batchelor v. Sears, Roebuck & Co.*, 574 F.Supp. 1480, 1485 (E.D.Mich. 1983). "[A] mere subjective expectancy on the part of an employee will not create such a legitimate claim." *Schwartz v. Michigan Sugar Co.*, 106 Mich.App. 471, 478, 308 N.W.2d 459 (1981). *See also, Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986). It is only when an employee has a legitimate expectation of certain treatment, an expectation created by the employer's statements of policy, that the employee may enforce an employer's obligation to fire for cause only or to follow particular personnel procedures. *Renny v. Port Huron Hospital*, 427 Mich. 415, 398 N.W.2d 327. A mere subjective expectation does not create an enforceable contract right. *Vollrath*, 899 F.2d at 535 (cites omitted).

■ In this case, plaintiff asserts that an implied contract of employment existed and that she had a legitimate expectation that she would be discharged only for cause. In support of this contention, she first points to the statement made by Mr. Campbell that he "advised Ms. Enos that if she did not report for work as scheduled the week of July 16, 1988, *without good cause,* she would be terminated." Campbell Aff. ¶ 23 (emphasis added). Plaintiff claims that based on this "alone, [she] has the proper objective statement which would lead her to subjectively believe that she would not be fired for missing work if it was medically inadvisable for her to work.... Any vacation issues are merely a red herring in this litigation." Opposition Brief at 8. Mr. Campbell's statement was not a statement of policy by Penney and could not give rise to a legitimate expectation that plaintiff would be terminated for cause only. *See Batchelor*, 574 F.Supp. at 1485. Nothing about Mr. Campbell's statement reflected a policy of Penney, nor has plaintiff submitted any evidence that an oral agreement that plaintiff would not be discharged except for cause was entered into between herself and Penney via this statement. *See Toussaint*, 408 Mich. at 598, 292 N.W.2d 880.

■ Plaintiff next claims that statements contained in the J.C. Penney employee handbook gave rise to an implied contract of employment between herself and Penney. First plaintiff cites to a statement found under the heading "The JCPenney Idea." That statement provides: "To test every policy, method and art in this wise: 'Does it square with what is right and just.'" Second, plaintiff cites to a statement contained under the heading "Welcome" in the handbook. This statement states: "Our company has continued to use the 'Golden Rule' philosophy as a basis for

business through the years." Plaintiff states that she was reminded of these policies daily by postings throughout employee break areas. She claims that she "certainly had a legitimate subjective expectation based upon these objective written policies that she would only be terminated for just and good reason." Opposition Brief at 10.

This language does not rise to the level of an implied contract. Neither statement comes close to *Toussaint*. In *Toussaint*, a manual given to Mr. Toussaint indicated that company policy was "to treat employees ... in a fair and consistent manner and to release employees for just cause only." *Toussaint*, 408 Mich. at 127, 292 N.W.2d 880. There is simply no attempt in the statements Ms. Enos points to to state a company policy that employees would only be fired for good cause.

Plaintiff also points to the acknowledgment of Penney's policies and regulations, which she was required to sign, that states "I understand that a violation of any of [the store policies and] regulations is grounds for dismissal" and the fact that the company's termination policies are codified as further proof of an implied employment contract. None of these documents gives rise to an employment contract.

The mere listing of reasons for discharge does not create a for cause employment contract. Plaintiffs' argument was rejected by the Sixth Circuit in *Pratt v. Brown Machine Co.*, 855 F.2d 1225 (6th Cir.1988) and *Reid v. Sears, Roebuck & Co.*, 790 F.2d at 459 (6th Cir.1986), and by this Court in *Burke v. Indiana & Michigan Electric Co.*, No. K87–386, 1988 WL 235869 (W.D.Mich.1988). In all three cases the respective courts rejected the argument that the listing of causes that may result in termination of employment detracted in any way from the at-will status of the plaintiff's employment. *Pratt*, 855 F.2d at 1233; *Reid*, 790 F.2d at 460; *Burke*, No. K87–386 at 11.

Plaintiff has failed to show that a genuine question of fact exists on the question of whether she had a "for cause" employment contract. Plaintiff has failed to

prove that any promise was ever made to her directly that she would be fired only for cause, nor has she shown that any policy statement of Penney created a reasonable expectation of continued employment. The Court fails to see how plaintiff could have formed a reasonable expectation that she would be fired only for just cause. The Court finds, therefore, that no material issue of fact remains regarding the existence of an employment contract to discharge for cause only. Plaintiff was an at-will employee. I need not reach the question of whether good cause to fire plaintiff existed. Accordingly, I will grant defendant's motion for summary judgment on Counts II and III of plaintiff's complaint.