**Lois PROFFITT, Plaintiff,**

v.

**DEPARTMENT OF INTERIOR ex rel. Manuel LUJAN, Jr. et al., Defendants.**

Civ. A. No. C92–0695–L.

United States District Court,
W.D. Kentucky,
at Louisville.

July 1, 1993.

Gregory L. Smith, Arthur L. Williams, Woodward, Hobson & Fulton, Louisville, KY, for plaintiff.

Richard A. Dennis, U.S. Attorney's Office, Louisville, KY, for Dept. of Interior and Dept. of Justice.

Brenda Gail Lowe, Dept. of Law, Frankfort, KY, for E.P.A. and Kentucky Natural Resources & Environmental Protection Cabinet.

Frank G. Simpson, III, Pedley, Ross, Zielke, Gordinier & Porter, Louisville, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on Defendants' motions to dismiss pursuant to Rule 12(b)(6) based upon the absence of federal subject matter jurisdiction and on Defendants' motions to stay discovery pending a ruling on such motions. Plaintiff, Lois Proffitt, challenges generally the North County Action Plan ("NCAP"), a local effort to improve wastewater treatment in northern Jefferson County by constructing a regional sewage system and thereby eliminating pollution concomitant with small area wastewater treatment plants and septic tanks.

Plaintiff alleges violations of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.*, against the Environmental Protection Agency ("EPA"), the Department of Interior ("Interior"), and the Department of Justice ("Justice") ("Federal Defendants"), and against the Louisville and Jefferson County Metropolitan Sewer District ("MSD") and the Kentucky Natural Resources and Environmental Protection Cabinet ("Natural Resources").

Plaintiff also alleges violations of the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1531 *et seq.*, against Interior, MSD, and Natural Resources. Plaintiff seeks to enjoin MSD from further work on the NCAP until MSD and EPA complete another Environmental Impact Statement ("EIS"). Plaintiff asserts that this additional EIS is required to protect three endangered species:

the Indiana bat, the gray bat; and the Running Buffalo clover.

For the reasons set forth herein, the Court will dismiss the NEPA claims against all Defendants, and will dismiss the ESA claims against all Defendants except MSD. The exercise of subject matter jurisdiction in this case, therefore, is limited to the ESA claim against MSD.

I.

In a Memorandum Opinion dated November 13, 1992, this Court denied Plaintiff's motion for a temporary restraining order and reserved further disposition of this case until later rulings. Specifically, the Court cautioned Plaintiff that she had not established the requisite federal nexus for this Court to exercise jurisdiction under NEPA. The Court has now thoroughly reviewed Plaintiff's pleadings and memoranda which address the issue of jurisdiction. To support her position, Plaintiff ultimately asserts that the basis of this Court's exercise of subject matter jurisdiction under NEPA and ESA is the "federal character" of NCAP. (Pl.'s Mem.Opp'n U.S. Mot. to Dismiss at 6.)

Plaintiff emphasizes two elements of NCAP's "federal character": MSD's anticipation of federal funding and EPA's preparation of an EIS. (Pl.'s Mem.Opp'n U.S. Mot. to Dismiss at 6–7.) Plaintiff contends that the correspondence between MSD and EPA will prove that NCAP will necessitate the expansion of the Morris Foreman Treatment Plant ("Morris Foreman"), which is eligible for federal funding. (Pl.'s Resp. to MSD's Mot. to Stay Disc. at 2–5.) Plaintiff claims that EPA accordingly was substantially involved in MSD's environmental assessment strategy. Plaintiff concludes that prospective federal funding of Morris Foreman would constitute indirect federal funding of NCAP. (Pl.'s Mem.Opp'n U.S. Mot. to Dismiss at 8.)

For purposes of these motions to dismiss, the Court will assume that Plaintiff's assertions are true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue remains, however, whether Plaintiff's allegations, even if prov-

en, are sufficient to sustain the jurisdiction of this Court under either NEPA or ESA.

## II. NATIONAL ENVIRONMENTAL POLICY ACT

■ NEPA applies only to "major federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(C), to ensure that federal agencies are aware of the environmental impact of their actions. *Michigan v. United States,* 994 F.2d 1197, 1199 (6th Cir.1993). "Congress did not intend NEPA to apply to state, local, or private actions—hence, the statute speaks only to 'federal agencies' and requires impact statements only as to 'major federal actions.'" *Atlanta Coalition v. Atlanta Regional Comm'n,* 599 F.2d 1333, 1344 (5th Cir.1979). Nonfederal defendants are amenable to the strictures of NEPA, however, if they enter into a partnership or a joint venture with the federal government. *Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 990 (6th Cir.1989); *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391 (9th Cir.1991). In cases of seemingly local concern, "federal action is typically present only when a project is wholly or partly federally funded." *Burnley,* 896 F.2d at 990. Therefore, this Court must determine as a threshold whether NCAP involves federal action, and if so, whether the agency action is major or significant. *See Crounse Corp. v. Interstate Commerce Comm'n,* 781 F.2d 1176, 1194 (6th Cir.1986); *N.A.A.C.P. v. Medical Ctr., Inc.,* 584 F.2d 619, 629 (3d Cir.1978).

### A. Intent to Seek Federal Funding

■ Plaintiff argues that because MSD intends to seek federal funds for either NCAP or the expansion of Morris Foreman, NCAP constitutes a major federal action. Even if Plaintiff proves this assertion, however, the intent to seek federal funds in the future does not establish the requisite federal nexus for NEPA. *Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 990–1 (6th Cir.1989); *Los Ranchos de Albuquerque v. Barnhart,* 906 F.2d 1477, 1480 (10th Cir. 1990); *Highland Park v. Train,* 519 F.2d 681, 685 (7th Cir.1975); *Boston v. Volpe,* 464 F.2d 254, 258 (1st Cir.1972). NEPA does not

"require an agency to consider the possible environmental impacts of less imminent actions." *Crounse Corp. v. Interstate Commerce Comm'n,* 781 F.2d 1176, 1194 (6th Cir.1986).

### B. Involvement With Federal Projects

Plaintiff erroneously argues that proof of the direct *or indirect* receipt of federal funds will establish federal action. (Pl.'s Resp. to MSD's Mot. to Stay Disc. at 5.) She asserts that NCAP will necessitate the expansion of Morris Foreman, which is eligible for federal funding. To support her position, Plaintiff relies heavily upon two district court opinions, *La Raza Unida. v. Volpe,* 337 F.Supp. 221 (N.D.Cal.1971), and *Highland Co-op. v. Lansing,* 492 F.Supp. 1372 (W.D.Mich.S.D. 1980), neither of which is binding on or persuasive to this Court.[1]

■ Federal funding of one part of a large and general project does not render the entire project a major federal action. *Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 990–1 (6th Cir.1989). Courts have consistently declined to extend NEPA to state or local projects that are not federally funded, even if those projects are related to or necessitated by federal projects. *See Burnley; Piedmont Heights Civic Club, Inc. v. Moreland,* 637 F.2d 430 (5th Cir.1981); *N.A.A.C.P. v. Medical Ctr., Inc.,* 584 F.2d 619 (3d Cir.1978).

■ In *Burnley,* the Sixth Circuit adopted the standard articulated in *Hawthorn Envtl. Preservation Ass'n v. Coleman,* 417 F.Supp. 1091, 1100 (N.D.Ga.1976), *affd.* 551 F.2d 1055

(5th Cir.1977), to determine whether NEPA applies to a state-funded portion of a large project.[2] Although the *Burnley* court was evaluating a highway project, this Court will consider these factors as persuasive in its analysis of NCAP rather than adopt Plaintiff's vague "federal character" standard, which cannot be applied uniformly.

NCAP includes the Ohio River Force Main Project, the Falls Creek Interceptor/Glenview Woods Pumping Station Project, and the Glenview Area Collector Sewer Project. (Garner Aff. ¶ 2.) The specific plans for NCAP do not include the expansion of Morris Foreman. Wastewater will be transferred from the Ohio River Force Main to Morris Foreman through the existing Ohio River Interceptor. (MSD's Mem.Opp'n Mot. T.R.O. at 3.) MSD chose to channel this waste to Morris Foreman for treatment because of "flow reduction because of population loss, industry relocation, water conservation measures, and diversion of wastewater to a newly constructed west county treatment plant." (MSD's Mem.Opp'n T.R.O. at 3.) In other words, MSD did not make its decision because Morris Foreman is eligible for federal funding.

Since no part of NCAP is a direct connective link to Morris Foreman, this Court must conclude that NCAP has both independent utility and logical termini. Even if there were a direct link, MSD has not yet received federal funds to expand Morris Foreman. NCAP serves local, not federal needs; the citizens of Jefferson County have a strong interest in the proper treatment of public waste. Under the standard used in *Burnley,*

---

1. In *La Raza Unida,* the court held that NEPA applies to highway projects that anticipate federal funding and to which a federal agency has given location approval. In that case, however, the state required the FHWA to give location approval to highway projects. No federal agency has approved or need approve the location of NCAP. Other courts have criticized *La Raza Unida's* holding. *See Los Ranchos de Albuquerque v. Barnhart,* 906 F.2d 1477, 1481 (10th Cir. 1990); *Citizens for a Balanced Environment v. Volpe,* 376 F.Supp. 806, 812–3 (D.Conn.1974) (cited with approval in *Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 991 (6th Cir.1989)).

*Highland Co-op. v. Lansing,* 492 F.Supp. 1372 (W.D.Mich.S.D.1980), involved a highway pro-

ject which was approved for and granted federal funding before the city withdrew its request for further federal aid. The court held that NEPA applied because the project was "so imbued ... with a federal character." *Id.* at 1378. In this case, however, NCAP has neither received nor been approved for federal funding. (Garner Aff. ¶¶ 3–4.) NCAP does not involve the ongoing "federal-local partnership," *id.,* which the court found in *Highland Co-op.*

2. The court considered whether the state-funded segment (1) is a connective link to the federal segment; (2) has independent utility; (3) has logical termini; and (4) serves local needs. *Burnley,* 896 F.2d at 991.

therefore, NCAP does not involve major federal action.

### C. EIS Assistance

■ Plaintiff finally argues that because EPA is involved in MSD's environmental assessment strategy, NCAP is further imbued with federal character. Yet, in *Los Ranchos de Albuquerque v. Barnhart,* 906 F.2d 1477 (10th Cir.1990),[3] both federal funding and EIS assistance were present, and the court held that the project was not a major federal action. The *Barnhart* court concluded that since an EIS is not required until *after* a project is deemed to involve major federal action, the voluntary preparation and funding of an EIS by a federal agency does not establish the requisite federal nexus. *Id.* at 1482. The court found that voluntary preparation of an EIS and federal advice concerning where to locate a project were neither major nor significant in view of the enormity of the entire project. *Id.* In this case, EPA's voluntary involvement with MSD's environmental assessment strategy does not establish a federal presence in NCAP. Environmental assessment is merely a small part of the project, and EPA was not involved in the planning or the implementation of NCAP.

Plaintiff claims that with discovery, she will uncover facts which will establish that NCAP involves major federal action. On December 12, 1992, Plaintiff served MSD with Requests for Admissions, Requests for Production of Documents, and Interrogatories. Most of these elements of discovery relate to compliance with NEPA and ESA rather than to the threshold issue of jurisdiction.[4] Many of the requests that do relate to jurisdiction involve MSD's future or anticipated use of federal funds, both for NCAP and for other projects. A great deal of information about NCAP is available in the Record. Plaintiff herself admits that through discovery, she "can only obtain evidence that MSD *will* receive federal funds or state revolving loan funds to expand *Morris Forman*

[sic]." (Pl.'s Resp.Mot. to Stay Disc. at 5) (emphasis added). Such a discovery would not alter the Court's view of this case.

### D. Conclusion

The fact remains that MSD has neither received nor is eligible for federal funding for NCAP. (Garner Aff. ¶¶ 3–4; *see also* Letter from Mueller to MSD of 7/12/91, at 2.) Even if the expansion of Morris Foreman is ultimately funded entirely by federal agencies, NCAP is a separate, independent project, and "federal action is typically present only when a project is wholly or partly federally funded." *Burnley,* 896 F.2d 985, 990 (6th Cir.1989).[5]

Plaintiff, therefore, fails to establish that a federal agency is involved in NCAP. Even if Plaintiff had proved that NCAP involves federal agency action, that action is not sufficiently "major" to support jurisdiction. The Council on Environmental Quality ("CEQ") defined "major federal action" as "new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." 40 C.F.R. § 1508.18(a) (1984). Many courts, including the Sixth Circuit, follow these guidelines in determining whether a project is a major federal action, because "CEQ's interpretation of NEPA is entitled to substantial deference." *Andrus v. Sierra Club,* 442 U.S. 347, 358, 99 S.Ct. 2335, 2341, 60 L.Ed.2d 943 (1979). *See Bunch v. Hodel,* 793 F.2d 129, 135 (6th Cir. 1986).

EPA has voluntarily offered assistance and guidance for environmental surveys, (Garner Aff. ¶¶ 2–4), but it has neither responsibility for nor discretionary power over NCAP. (U.S. Resp.Opp'n Mot.T.R.O. at 10–11.) Since Defendants have already disclosed a great deal of information in the Record, this Court cannot imagine anything that Plaintiff could find through discovery which would establish the requisite federal nexus. The Court concludes that because the federal

---

3. The Sixth Circuit has not ruled on this specific factual scenario, so this Court accepts *Barnhart* as persuasive authority.

4. *See, e.g.,* Interrogatories 9–13.

5. *See also Los Ranchos de Albuquerque v. Barnhart,* 906 F.2d 1477, 1483 (10th Cir.1990) ("Even if a local project terminates at a point of juncture with a federally funded project, that would not preclude segmentation.")

government provides no funds directly or at this point even indirectly to NCAP and because federal agencies have only voluntarily assisted in the preparation of an EIS, NCAP is not a "major federal action" sufficient to invoke jurisdiction under NEPA.

## III. ENDANGERED SPECIES ACT

Plaintiff also asserts that NCAP constitutes a "taking" under ESA and that she is therefore entitled to injunctive relief under 16 U.S.C. § 1540(c). Any "person subject to the jurisdiction of the United States" may be sued under ESA. 16 U.S.C. § 1538(a)(1). A violation of ESA includes the "taking" of an endangered species, 16 U.S.C. § 1538(a)(1)(B), for which there is a private right of action, 16 U.S.C. § 1540(g). "Taking" is defined as an intentional or negligent act that creates a likelihood of injury to wildlife "by annoying it to such an extent as to significantly disrupt normal behavior patterns which include breeding, feeding, or sheltering." 50 C.F.R. 17.3(c).

### A. Federal Defendants

To be amenable to the strictures of ESA, a federal agency must authorize, fund, or carry out the action which threatens the continued existence or habitat of an endangered species. 16 U.S.C. 1536(a)(2). When there is such "federal agency action" in an area in which an endangered species is present, the agency must conduct a biological assessment of that area. 16 U.S.C. § 1536(c). If the agency finds that the proposed project has a potentially adverse effect on the species, it must seek a formal consultation. 50 C.F.R. 402.14(a).

■ In this case, neither Interior nor EPA has authorized, funded, or carried out MSD's project. (U.S. Reply to Pl.'s Opp'n to Mot. to Dismiss at 8.) EPA voluntarily assisted MSD in its environmental surveys; it did not, however, assume responsibility for NCAP. As the Court stated in regard to the NEPA claim, the Court cannot imagine what facts Plaintiff could obtain through discovery which would establish the requisite federal nexus. Since there is no federal agency action, this Court does not have jurisdiction over the Federal Defendants in the ESA claim.

### B. Kentucky Natural Resources and Environmental Protection Cabinet

■ Plaintiff asserts that Natural Resources has violated ESA because of its duty to enforce the statute. Plaintiff further argues that Natural Resources is a "conduit" or an "intermediary" for the transfer of federal funds—for either NCAP or the Morris Foreman Treatment Plant—to MSD. (Pl.'s Resp. to Natural Resources' Mot. to Dismiss at 6.) Ultimately, Plaintiff asserts that Natural Resources is amendable to suit because it will have to issue MSD a new permit for the discharge of water into the Ohio River. (Pl.'s Resp. to Natural Resources' Mot. to Dismiss at 3–4.)

A state agency, however, is only amenable to the strictures of ESA if it directly violates the statute or if it engages in a "cooperative agreement," 16 U.S.C. § 1535(c), with a federal agency. The mere act of receiving federal funds for which Natural Resources might act as a conduit would not create such a "cooperative agreement." In any event, Natural Resources has not received any such funds. There can be no cooperation when federal assistance is merely anticipated. Plaintiff's ESA claim, therefore, should be dismissed as to Natural Resources.

### C. Metropolitan Sewer District

Plaintiff also contends that MSD has directly violated ESA because NCAP constitutes a "taking." (Pl.'s Mem.Supp.T.R.O. at 9–11.) This assertion remains as Plaintiff's sole viable claim. Plaintiff asks this Court to enjoin MSD from further construction of NCAP until MSD completes a supplemental EIS which assesses NCAP's impact upon three endangered species.

Plaintiff contends that: (1) MSD failed to perform a required "area wide survey"; (2) MSD's biological assessments were inadequate and inaccurate; and (3) NCAP will irreparably harm the environment and three endangered species.

MSD, on the other hand, asserts that its biological assessments of the three endan-

gered species were more than sufficient, and it has introduced a great deal of documentation of this compliance with ESA into the Record. MSD contends that it merely needed to survey the area in which NCAP would have an impact, not the entirety of northern Jefferson County. After his surveys, an ecologist hired by MSD found that NCAP would not have a significant impact on the three endangered species. (Bryan Aff. ¶¶ 6, 12, 13.) MSD concludes that this assessment is both accurate and adequate.

As this Court stated in its Memorandum Opinion of November 13, 1992, Plaintiff has made many assertions but has failed to present evidence to support them. Plaintiff will now have an opportunity to prove the validity of her claims.

## IV. DISCOVERY

Since NCAP has been partially completed, Plaintiff must use her opportunity for discovery to demonstrate that NCAP's impact on endangered species is so severe and so irreparable as to outweigh the strong public interest in clean water and in the proper treatment of public waste. MSD, however, will not be required to respond to discovery requests which aim to establish a significant federal presence in NCAP. Plaintiff's discovery, therefore, should be limited to those requests which relate to NCAP's impact upon the three endangered species. Specifically, Plaintiff's proposed discovery should be limited to: (1) Interrogatories 7–13; (2) Request for Production of Documents 3; and (3) Requests for Admissions 15–28.

The Court will enter an Order consistent with this Memorandum Opinion.

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss.

The Court having fully considered the issues, having issued a Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that all Defendants' Motions to Dismiss the National Environmental Policy Act claims are SUSTAINED.

IT IS FURTHER ORDERED that the Motions to Dismiss of Interior, EPA, Justice, and Natural Resources as to the Endangered Species Act claims are SUSTAINED.

IT IS THEREFORE ORDERED that the Environmental Protection Agency, the Department of Interior, the Department of Justice and the Kentucky Natural Resources and Environmental Protection Cabinet are dismissed as defendants in this case.

IT IS FURTHER ORDERED that MSD's Motion to Dismiss the Endangered Species Act claim is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Discovery shall be limited as set forth in this Memorandum Opinion.