Albert **WARE** and Helen Ware, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. 1:92:CV:823.

United States District Court,
W.D. Michigan.

Jan. 12, 1994.

James R. Hulbert, Henry L. Guikema, PC, Grand Rapids, MI, for plaintiffs.

Keith V. Morgan, Trial Atty., U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on cross-motions for summary judgment filed by the parties as directed by this Court.

At issue is whether plaintiff Albert Ware was an "employee" or an "independent contractor" for tax purposes. Plaintiffs seek to amend their federal income tax returns for the years of 1988 through 1990. They contend that Mr. Ware was an independent contractor during those years and, as a result, he was entitled to deduct his business expenses on Schedule C, rather than on Schedule A, which is applicable to business expenses taken by "employees." If Mr. Ware's business deductions can be claimed on Schedule C, then plaintiffs would not be subject to the two percent floor or the alternative minimum tax provisions that are applicable to business expense deductions made on Schedule A. Consequently, plaintiffs would be entitled to a significant tax refund.

### FACTS

For the most part, the facts are not disputed. From 1962 to 1986, Mr. Ware was an inside insurance salesperson for AAA Insurance. In 1986, Mr. Ware, in conjunction with two other AAA sales agents, pursued an opportunity offered by AAA to its sales agents which allowed them to become general agents and open their own AAA insurance sales offices.

Prior to opening this outside office, Mr. Ware had to have a location approved by AAA according to the General Agents Manual. Mr. Ware and his associates conducted a market survey to determine where to locate the sales office. The location chosen, and approved, was 4242 Kalamazoo, Grand Rapids, Michigan.

The General Agents Manual provided as follows:

The Company (AAA) reserves the right to assign, transfer, or relocate you (general agent) and to change any and all policies, procedures, rules, commissions, fees, fringe benefits, and methods of operations and doing business, at any time with or without prior notice, subject to the terms and conditions of the employment agreement.

As a general agent, Mr. Ware was allowed to sell only AAA insurance. Apparently, AAA also allowed general agents to place insurance with other insurers of risks which did not meet AAA underwriting standards.

According to the employment agreement, general agents would be paid by commission on a semimonthly basis. Other compensation provided to general agents included many benefits, such as health and dental insurance, a retirement plan, and a 401(k) tax-deferred investment plan in which AAA matched the amount contributed by employees, apparently dependent upon performance.

The employment agreement expressly provided that a general agent's employment could be terminated with or without cause, at any time, at the option of either AAA or the general agent by written notice. Also, the agreement established annual minimum production requirements, which if not achieved would result in dismissal, transfer or demotion.

Upon termination, the general agent agreed to refrain from involvement in insurance sales for 90 days with respect to any client he had previously sold AAA insurance. In addition, all materials provided to the general agent, including customer lists and the identity of all customers of AAA were to remain AAA's property and were to be re-

turned to AAA within three days following termination.

AAA required general agents to maintain an office and equipment, including a computer terminal and telephone equipment, subject to AAA's approval in regard to physical layout and location. AAA was obligated to pay for the general agent's telephone service, including a listing in the white pages of the telephone directory and also in the yellow pages, if AAA runs an advertisement in the yellow pages covering the agent's location.

If clerical or technical assistance was needed by general agents, AAA required that they be obtained through an agency providing temporary help and paid for by the general agents. According to Mr. Ware, his method of meeting this requirement was to first determine who he wanted to hire and then send the prospective employee to a temporary services company to sign up.

AAA required the general agent's office to be open at least 45 hours per week, including from 9:00 to 5:00 on weekdays.

Apparently, the initial investment by Mr. Ware and his two associates for the office equipment and furniture was between $8,000 and $10,000 total. Mr. Ware reported to AAA field managers. However, apparently, this contact was only every two or three months.

In filing tax returns, plaintiffs reported their business expenses on Schedule A, for employees, and not Schedule C, until 1992. In 1992, plaintiffs sought to switch the expenses reported for the tax years of 1988, 1989, and 1990 to Schedule C and requested tax refunds for those years. The I.R.S. denied this request on June 8, 1992 stating that he was a common law employee, and instructed plaintiffs on how and where to bring suit to challenge the I.R.S. determination.

### Standard for Summary Judgment

In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir. 1982).

The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989). On the other hand, the opponent has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'* " *Historic Preservation,* 896 F.2d at 993 (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions encourage the granting of summary judgments where there are no material facts in dispute. *Historic Preservation,* 896 F.2d at 993 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2573–74). Con-

sistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

### DISCUSSION

■ The determination of whether a person is an "employee" or an "independent contractor" should comport with traditional agency law principles. *Nationwide Mutual Ins. Co. v. Darden*, — U.S. —, —, 112 S.Ct. 1344, 1350, 117 L.Ed.2d 581, 592 (1992) (in considering the issue in an ERISA context). In addition, in the tax code context, federal regulations and Internal Revenue Service rulings provide factors to consider.

■ If a worker is "subject to the will and control of the employer not only as to what shall be done but how it shall be done," this generally indicates the existence of an employer-employee relationship. 26 C.F.R. § 31.3401(c)–1(b). "[I]t is not necessary that the employer actually control the manner in which the services are performed; it is sufficient if he (sic) has the right to do so." *Id.* However, in general, if the person is not subject to the control of the employer as to "the means and methods for accomplishing the result," then he or she will not be considered an employee. *Id.*

The I.R.S. Revenue Ruling 87–41. 1987–1 C.B. 296, 298–99 identifies 20 factors that should be used in distinguishing whether an individual is an employee or an independent contractor. Both parties have specifically addressed each of these factors, however, plaintiffs contend that recent Supreme Court

cases have moved away from what they term a "somewhat expansive definition of 'employee' embodied in the Revenue Ruling" (citing *Nationwide*, — U.S. —, 112 S.Ct. 1344, 117 L.Ed.2d 581 and *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)).

■ I see nothing in the 20 factors proposed by the I.R.S. Revenue Ruling that is inconsistent with the approach taken by the Supreme Court. In fact, the factors used in *Reid* and cited in *Nationwide* seem closely related to those in the Revenue Ruling. 490 U.S. at 751–52, 109 S.Ct. at 2178–79.[1] Furthermore, *Nationwide* cited the Revenue Ruling as a source for appropriate factors to consider. — U.S. at —, 112 S.Ct. at —, 117 L.Ed.2d at 590. Therefore, this Court will consider each of the 20 factors identified on the Revenue Ruling. None of the factors alone are considered determinative of the question. *Reid*, 490 U.S. at 752, 109 S.Ct. at 2179.

### Consideration of the Revenue Ruling Factors

*1. Instructions:*

■ AAA's General Agent Manual regulates many of the functions of AAA's general agents. It requires that the agent's office be open at least 45 hours per week, including from 9:00 to 5:00 on weekdays. It specifies the method by which support staff may be hired. In fact, it specifies the size of the office sign. Also, as a general agent, Mr. Ware is required to attend Quality First orientation meetings that concern the interaction of employees and how to handle customers.

On the other hand, there are no instructions requiring Mr. Ware to practice any particular sales techniques or to use certain

---

1. In *Reid*, which involved an employer seeking to have copyright rights to materials created by an individual who worked for it, the Court, in stating that it was applying the common law of agency, specified the following factors: the right to control the manner and means of performance, the skill required, the source of tools and instrumentalities, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether work is part of the regular business of the hiring party, and the provision of employee benefits. 490 U.S. at 751–52, 109 S.Ct. at 2178–79. In addition to the Revenue Ruling factors, plaintiffs specifically addressed the *Reid* factors in their brief.

materials. Obviously, Mr. Ware must use AAA insurance applications and ensure that AAA underwriting guidelines are met prior to submitting the applications. Because of a lack of instructions as to the details of how Mr. Ware must sell insurance and handle customers, this factor favors plaintiff.

### 2. Training:

The General Agent Manual provides specific instructions on how to perform the mechanics of information recording and communication with respect to sales of policies. However, it does not provide sales training, such as information on how to close a sale or how to locate customers. Mr. Ware testified that he had more freedom as a general agent than he had as an inside sales agent.

Defendants note that AAA offered several training options to enable employees to enhance their knowledge and increase their self-development. However, they also acknowledge that because Mr. Ware had so much prior sales experience, he may have required little training in the sales aspect. There have been other meetings that Mr. Ware has attended concerning quality and information on new AAA promotions. I do not view this factor as favoring either party.

### 3. Integration:

Certainly, the service provided by Mr. Ware and other general agents is central to the business operations of AAA. It is not similar to janitorial services or waste management services as suggested by plaintiffs. Rather, selling and providing insurance is the primary business of AAA.

All policies that Mr. Ware writes must be for AAA and it must approve the policies. His computer system is tied directly to AAA. He faced some restrictions in advertising and in where he could locate his business. Clearly, this factor favors defendant.

### 4. Services Rendered Personally:

Mr. Ware sells the insurance personally, however, there is no requirement under the employment agreement or Agent Manual requiring him to be present during the hours the office is open. He is free to hire licensed solicitors to sell insurance for him and to arrange the compensation to be paid those assistants. However, AAA retained the right to approve any such assistants. This factor, on balance, appears to favor plaintiffs.

### 5. Hiring, Supervising and Paying Assistants:

The solicitors whom Mr. Ware could hire would be under his control, although AAA would have the power to approve of the initial hiring of such workers. Mr. Ware would control the compensation, hours, and training associated with such workers without any participation by AAA. Similarly, clerical workers are hired, supervised and compensated by Mr. Ware. AAA's only input is the restriction that the clerical workers actually be from a temporary employment service and that the solicitors would be independent contractors and not employees of Mr. Ware or AAA. This factor favors plaintiffs.

### 6. Continuing Relationship:

Clearly, there is a continuing relationship between Mr. Ware and AAA as he has been selling AAA insurance policies since 1962. However, I agree with plaintiffs that this factor is more instructive when there is a lack of a continuing relationship, and that the presence of a continuing relationship is only marginally indicative of an employer-employee relationship.

### 7. Set Hours of Work:

While AAA essentially sets the hours that Mr. Ware's office must be open, it does not specify when Mr. Ware must be there. However, Mr. Ware understands that AAA has established his amount of annual vacation leave to be six weeks, due to having more than 25 years of service. I do not see this factor as supporting either party.

### 8. Full Time Required:

Although Mr. Ware apparently works full time as a general agent for AAA, there is apparently no requirement that he do so. He appears to be free to meet his productivity requirements without working full time. I

do not see this factor as supporting either party.

### 9. Work on Employer's Premises:

Almost by definition, Mr. Ware, as a general agent, works out of his own office, independently furnished and paid for. He does not work on AAA premises. AAA's only input is that the office space must be within a geographical area designated by AAA. This factor clearly favors plaintiffs.

### 10. Order or Sequence Set:

AAA does not set the sequence of Mr. Ware's activities. Mr. Ware determines when to call on customers, the manner of his presentations, and the manner and timing of his customer follow-up. The only sequencing required by AAA involves the requirement that he remit payments received and transmit applications submitted promptly. This factor appears to favor plaintiffs.

### 11. Oral or Written Reports:

Mr. Ware does not submit reports or summaries to AAA, except for the application information which must be processed by AAA in order to have policies be issued. He does not provide AAA with a log of sales calls or of daily activities, unlike AAA inside salespersons. Defendant contends that there is constant interaction between Mr. Ware and AAA via the computer terminal. However, this appears to be limited to making sure the policies are set up appropriately. While the computer facilitates communication with AAA and other AAA agents, this does not establish a requirement for reporting. On balance, this factor favors plaintiffs.

### 12. Payment by Hour, Week, or Month:

Although the payments to Mr. Ware from AAA are made twice per month, the amounts are determined entirely on a commission basis. As the Revenue Ruling itself stated, this is indicative of an independent contractor and favors plaintiffs.

### 13. Payment of Business and/or Transportation Expenses:

The only expenses reimbursed by AAA are those incurred by Mr. Ware in attending AAA meetings held outside of his region and the cost of his AAA business cards. There is also an advertising reimbursement allowance of up to $500 per year. Most of Mr. Ware's business expenses are not reimbursed. Overall, this factor favors plaintiffs.

### 14. Furnishing of Tools and Materials:

Mr. Ware pays for his own business tools. However, his computer, which he pays for, is furnished by AAA. Also, AAA furnishes the AAA business forms and Mr. Ware's business cards. This factor appears to favor plaintiffs.

### 15. Significant Investment:

Mr. Ware rents an office at fair market value away from AAA premises, and has invested in furniture and equipment to maintain the office. On the other hand, Mr. Ware has no property right in his book of business, as he must, upon termination, return the customer lists provided to him and refrain from selling insurance to his prior customers for ninety days.

Mr. Ware suggests that his book of business is, in effect, being purchased by AAA through Mr. Ware's pension plan. However, this inventive interpretation makes no logical sense to me.

Concerning the investment by Mr. Ware, defendant contends that the initial investment of $8,000 to $10,000 as split among three agents for furniture and a phone system is insignificant when compared to the higher income generated by the business. The daily and monthly expenses referred to by plaintiffs appear to go to profit and loss, rather than risk of investment. Consequently, I do not believe the investment amount is very significant. Nevertheless, there is some investment, and this factor weighs marginally in favor of plaintiffs.

### 16. Realization of Profit and Loss:

Mr. Ware's compensation is tied to his production, and is reduced by the expenses

he incurs. Mr. Ware risks economic loss or, at least, a significantly reduced income, due to his investment and to his liability for expenses. Conversely, Mr. Ware may realize considerable profit.

Defendant's reliance on the small amount of investment is misguided in that profit and loss is also determined by income less expenses. Mr. Ware's expenses appear to be substantial. He claims they were over $17,000 in 1988 and over $36,000 in 1990. As a result, this factor works in favor of plaintiffs.

### 17. Working for More than one Firm at a Time:

Clearly, Mr. Ware is limited to working only for AAA, although he can write insurance for customers not meeting AAA underwriting standards through an assigned risk plan using randomly assigned insurers. Plaintiffs recognize that this factor favors defendant.

### 18. Making Services Available to the General Public:

This factor seems unhelpful in the context of evaluating an insurance salesperson's status. While Mr. Ware offers his products to the general public, the product he offers is exclusively from AAA. No other insurance company may request services from Mr. Ware. This factor does not weigh significantly in favor of either party.

### 19. Right to Discharge:

Mr. Ware may be terminated with or without cause at any time upon notice. He may also be terminated for failing to meet the production minimum. Plaintiffs suggest that because this factor is not listed in the Restatement (Second) of Agency, which was also cited as a source for factors in Nationwide, — U.S. at ——, 112 S.Ct. at 1348–49, 117 L.Ed.2d at 590, it should not be given much weight. Neither Nationwide nor Reid mentioned the right to discharge or terminate the relationship as a helpful factor.

It seems to me that a true independent contractor may often be employed at the pleasure of the hiring party and vice versa. I agree with plaintiffs that this factor is of little value. Nevertheless, that value weighs in favor of defendant.

### 20. Right to Terminate:

This factor is referring to the worker's right to terminate the relationship. As with the right to discharge, this factor does not appear to be very instructive. Nevertheless, to the extent it has any weight, it favors defendant.

### Weighing the factors

None of the factors is to be treated as decisive. Nationwide, — U.S. at ——, 112 S.Ct. at 1348–49, 117 L.Ed.2d at 590. However, as indicated above, some of the factors seem to be clearly more instructive than others. The most important factors, it seems to me, are those dealing with AAA's control, or lack of control, concerning the means and manner of Mr. Ware's work. See 26 C.F.R. 31.3401(c)–1(b).

In reviewing the control factors, it is not necessary that the purported employer "stand over the employee and direct every move that he makes." Johnson v. Commissioner of Internal Revenue, T.C. Memo 1993–530, 1993 WL 471259, 1993 Tax Ct. Memo. LEXIS at *9.

While I am troubled by the fact that the parties treated this relationship as employer-employee up until 1992, particularly AAA,[2] I can find very little control being exercised or even retained by AAA with respect to the manner and means Mr. Ware uses in running his office and selling insurance. Although his office must be open from 9:00 to 5:00 on weekdays plus five other hours per week, this requirement hardly seems very surprising or intrusive. While Mr. Ware must use a computer terminal to keep in touch with AAA and must attend certain meetings, this contact does not appear to be directed at

---

**2.** In particular, the benefits provided to Mr. Ware including vacations, holidays, dental and health insurance, life and disability insurance, a retirement plan, and matched contributions to a 401(k) plan indicate that the parties considered

Mr. Ware to still be an employee. Furthermore, AAA's withholding of income and social security taxes on Mr. Ware reflected this belief, as did Mr. Ware's use of Schedule A on his tax returns for 1988, 1989, and 1990.

controlling the manner in which he performs his job daily.

The only factors that really weigh in favor of defendant in this matter are that general agents are an integral part of the operation of AAA and its business and, also, that Mr. Ware, as a general agent, cannot ordinarily sell any insurance except that offered by AAA. AAA has the power to approve the location chosen by Mr. Ware, to establish most of the hours his office must be open, to approve the configuration of his office, and to approve of workers he chooses to hire.

On the other hand, AAA does not require that Mr. Ware actually be present during the hours the office is open. AAA has made Mr. Ware responsible for any solicitors or clerical help he needs, including training, compensation and initial selection. Mr. Ware is financially responsible for his office, the equipment, and any employees he hires. He is paid on a straight commission basis.

I am inclined to hold that the undisputed facts in this case support a finding that Mr. Ware was, in fact, an independent contractor when working as a general agent in 1988, 1989, and 1990. However, the parties have provided other cases concerning determinations of whether salespeople were employees that the Court believes should be considered.

**Other Cases**

In *Simpson v. Commissioner*, 64 U.S.T.C. 974, 1975 WL 3150 (1975), a Farmer's Insurance Group salesperson working out of an office away from the purported employer's premises was found not to be an employee. Defendant attempts to distinguish this case by noting that the purported employer provided no benefits, considered the worker to be an independent contractor, and did not require the worker to attend meetings or reimburse him for expenses for meetings he would attend. One other distinguishing feature is that the purported employer did not provide leads to the worker, while there was a period when AAA provided leads to general agents when its inside sales staff could not handle the work.

While the facts differ somewhat from *Simpson*, I do not find that there is any evidence that the ability to control the means used by the salesperson in *Simpson* were any less than in the present case. In fact, the district manager visited Simpson three to five times per month, while Mr. Ware has testified that his contact with the field manager was every two or three months. *Id.* at 981. In neither case was the contact about the means used by the workers.

In *Butts v. Commissioner*, T.C.Memo. 1993–478, 1993 WL 410704 (1993), an Allstate Insurance salesperson who became a Neighborhood Office Agent was found not to be an employee. Like Mr. Ware, he could not solicit insurance for any other company without permission from Allstate and agreed to devote his time to selling Allstate. Also, as with Mr. Ware, he was paid on a straight commission and bore the responsibility for expenses incurred in running his office. Mr. Butts selected and paid his own support staff, as did Mr. Ware, and the company required that Mr. Butts use a temporary employee service and reserved the right to approve of such support staff. Allstate considered Mr. Butts to still be an employee and withheld taxes for him. Finally, Allstate provided Mr. Butts with benefits similar to those provided by AAA.

The only notable differences in Mr. Butts' situation and Mr. Ware's situation are that Allstate, unlike AAA, provided an Office Expense Allowance that helped defray some of the expenses incurred; Allstate, unlike AAA, provided start-up furniture for the new office; and Allstate could not discharge Mr. Butts unless his performance was below standard, and even then he had to be given an opportunity to correct his performance. Clearly, AAA's unwillingness to help with expenses is even more compelling evidence that Mr. Ware was not really an employee.

Concerning the ability to discharge only for lack of performance, the court in *Butts* noted that this ability was not tied in any way to corporate control over the manner in which Mr. Butts operated his business, but was directed solely at results. As with *Butts*, there is no evidence that the company ever took control, or had the authority to take control, over the manner in which a general agent operates his business, even if sales were less than expected. The "when,

where, why, and how" of selling insurance were left to Mr. Ware's personnel discretion, as they were with Mr. Butts. The court in *Butts* found that Mr. Butts was not an employee and could use Schedule C for his tax returns.

Defendant provides a case decided only two months ago in which a hospital equipment salesperson for Hill–Rom who became an outside commissioned salesperson was found to have remained an employee. *Johnson v. Commissioner of Internal Revenue*, T.C. Memo 1993–530, 1993 WL 471259. The situation for *Johnson* appears to be quite analogous to Mr. Ware. In *Johnson*, the court placed much emphasis on its interpretation that the company had the right to intervene and control the means and manner of performance, as supposedly stated, or perhaps implied, in the sales policy manual.

There are some facts that distinguish *Johnson:* Mr. Johnson was restricted to selling to customers from a particular territory; the court found Mr. Johnson was prohibited from hiring his own personnel; there was no provision requiring Mr. Johnson operate his own office; and Mr. Johnson was required to file daily call reports. I find these facts to significantly distinguish *Johnson* from *Butts* or the present case. There was significantly more evidence of control by the company in *Johnson* than exists here.

## CONCLUSION

For the foregoing reasons, I find that plaintiffs have met their burden in demonstrating that the undisputed facts indicate that there was no employer-employee relationship with respect to the tax code during the years of 1988, 1989, and 1990, when Mr. Ware worked as a general agent for AAA. Consequently, summary judgment is granted in favor of plaintiffs and against defendant. This amendment will apparently result in a tax refund for each of those years. Although the refund amounts were not objected to by defendant, this Court cannot be certain that they are accurate. Accordingly, the proper remedy is that plaintiffs should be allowed to file amended tax returns for 1988, 1989, and 1990 using Schedule C for Mr. Ware's business expenses.

## *JUDGMENT*

In accordance with the Opinion entered this date;

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment, filed November 30, 1993 (dkt. # 18), is **DENIED;**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment, filed November 22, 1993 (dkt. # 17), is **GRANTED;**

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered **IN FAVOR of PLAINTIFFS** and against defendant;

**IT IS FURTHER ORDERED** that plaintiffs shall be allowed to amend their federal income tax returns for the years 1988, 1989, and 1990 with respect to entering Mr. Ware's business expenses on Schedule C.