LANSING MERCY AMBULANCE SERVICE, a Michigan corporation; Rodney E. Palmer; Charlene Palmer; and Ted Spencer; Plaintiffs,

v.

TRI–COUNTY EMERGENCY MEDICAL CONTROL AUTHORITY, INC.; Clinton Memorial Hospital, Inc.; Eaton Rapids Community Hospital, Inc.; Hayes–Green–Beach Hospital, Inc.; Ingham Medical Center, Inc.; Lansing General Hospital; Michigan Affiliated Health–Care System, Inc.; St. Lawrence Hospital, Inc.; Sparrow Hospital, Inc.; Vernice David Anthony, Director; and Michigan Department of Public Health, Defendants.

No. 5:93:CV:25.

United States District Court,
W.D. Michigan.

July 31, 1995.

Richard A. Cascarilla, Lansing, MI, Robert L. Fitzke, East Lansing, MI, for plaintiffs Lansing Mercy Ambulance Service, Inc., a Mich. Corp., Rodney E. Palmer, Charlene Palmer, Ted Spencer.

Gregory G. Drutchas, Kitch, Saurbier, Drutchas & Wagner, Detroit, MI, John P. Ryan, Kitch, Saurbier, Drutchas & Wagner, Lansing, MI, for defendant Tri–County Emergency Medical Control Authority, Inc., St. Lawrence Hosp., Inc., Sparrow Hosp. Inc., Clinton Memorial Hosp., Inc., Eaton Rapids Community Hosp., Inc., Hayes–Green–Beach Hosp., Inc.

Paul M. Oleniczak, Kay L. Griffith, Hammond, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI John P. Ryan, Kitch, Saurbier, Drutchas & Wagner, Lansing, MI, for defendants Ingham Medical Center, Inc., Lansing Gen. Hosp., Michigan Affiliated Healthcare System, Inc.

Robert J. Taube, Frank J. Kelley, Atty. Gen., Public Health Div., Lansing, MI, for defendants Vernice Davis Anthony, Dir., Michigan Dept. of Public Health.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on the motion for summary judgment filed by plaintiffs and the cross-motion for summary judgment filed by the Tri–County Emergency Medical Control Authority and the seven defendant hospitals. Also remaining before the Court are a motion for misjoinder filed by the defendant hospitals and a motion for dismissal filed by defendant Vernice Davis Anthony, director of the Michigan Department of Public Health (MDPH).

On July 29, 1993, this Court issued an Order certifying five pivotal questions to the Michigan Supreme Court, recognizing that resolution of those issues could potentially render it unnecessary for this Court to address the federal questions raised in the case. On October 8, 1993, the parties filed a Joint Statement of Facts with the Michigan Supreme Court and this Court relative to the certified questions. On March 23, 1994, the Michigan Supreme Court declined the request to answer the certified questions.

A hearing relating to the various motions was held on March 30, 1995, providing the parties with an opportunity to present oral arguments in favor of their positions and

directed at issues raised by this Court. The parties also were permitted to submit post-hearing briefs to expand on their arguments at the hearing and to respond to arguments raised by other parties.

## FACTS [1]

This is an action for declaratory and injunctive relief filed by plaintiffs Lansing Mercy Ambulance Service, Inc. ("LMAS"), Rodney E. Palmer, Charlene Palmer, and Ted Spencer challenging the provisions of the Emergency Medical Services ("EMS") part of the Michigan Public Health Code, Michigan Compiled Laws § 333.20901–.20979, and the rules, regulations, and protocols issued and enforced pursuant to the statute, as being passed in a manner violative of Michigan statutes, the Michigan Constitution, and the United States Constitution. The federal claims are brought pursuant to 42 U.S.C. § 1983, which permits private suits in law or equity against persons who, under color of state law, ordinance, or regulation, cause a person to be subjected to a deprivation of rights secured by the Constitution or laws of the United States. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

LMAS's services are not limited to any specific political boundaries within Michigan. LMAS serves Ingham, Eaton, and Clinton counties, as well as the City of Hastings in Barry County. As a licensee under the EMS provisions of the Code, LMAS is subject to the protocols adopted thereunder. The individual plaintiffs are officers and/or stockholders of LMAS.

The defendants in this action are: the Tri-County Emergency Medical Control Authority ("TCEMCA"), a local medical control authority for Ingham, Eaton, and Clinton counties, designated by the Michigan Department of Public Health ("MDPH") pursuant to the EMS provisions of the Code; seven hospitals which are participating members of the TCEMCA; and Vernice Davis Anthony, Director of the MDPH, in her official capacity.[2]

The parties agree that, pursuant to the EMS statute, the MDPH is charged under the Act with the responsibility for developing, coordinating and administering a state-wide EMS system. The MDPH is required by the Act to designate a medical control authority for each county or, if appropriate, for part of a county or for more than one county ("LMCAs"). The LMCAs must be comprised of representatives of each type of emergency medical services provider and personnel functioning within the LMCA's boundaries.

The Act permits, but does not require, hospitals in the area covered by a LMCA to participate in "the ongoing planning and development activities" of the LMCA. Also, the Act provides that the participating hospitals shall "administer the LMCA." The hospitals also are mandated to appoint an LMCA advisory body and, with that body's advice, to appoint a physician, who practices or is board certified in emergency medicine, as the medical director of the LMCA. The advisory body must include, at a minimum, representatives of each kind of EMS provider and worker in the local boundaries.

Life support agencies and individuals licensed under the Act are accountable to the LMCA in the provision of EMS. The LMCA, pursuant to the Act, must establish written protocols for the practice of life support agencies and licensed EMS personnel in its region. Such protocols must be developed and adopted in accordance with procedures established by the MDPH, including circulation of proposed protocols to all significantly affected persons within the EMS system served by the LMCA, as well as submission of a written draft to the MDPH for approval. Although MDPH consideration of proposed protocols expressly is to review such proposals for consistency with protocols

---

1. These facts are derived from the Joint Statement of Facts provided to the Michigan Supreme Court for its consideration of the certified questions and from defendants' brief in support of their cross-motion for summary judgment. Plaintiffs accept the facts as stated in defendants' brief, except the inclusion of the word "volun-

tary" in referring to the participation fees collected by Local Medical Control Authorities.

2. Several of the defendant hospitals were improperly denominated in the complaint, and defendants' counsel has informed the Court of the proper technical names of these hospitals.

in other regions as part of its duty to coordinate a statewide EMS system, the notice requirements reveal that the MDPH review is also to be based upon the concerns expressed by affected persons within the region served by the LMCA. In post-hearing brief, defendants provided many letters and inquiries from the MDPH mentioning various concerns relating to proposed protocols.

Once approved, the LMCA may formally adopt and implement the protocols. Once the protocols are formally adopted and implemented, the LMCA is authorized to require life support agencies within its region to meet reasonable additional standards for equipment and personnel that may be more stringent than are otherwise required under the EMS provisions of the Code.

The Act provides that an affected person has a right to appeal decisions to the LMCA; and after exhausting such appeal may apply to the MDPH for a variance from the LMCA decision. With respect to such a request, the LMCA must make available the medical and economic information it considered in making its decision. The MDPH, in determining whether to grant a variance, must review the information and issue its own findings in writing. The MDPH may grant a variance if it determines that it is appropriate in order to protect public health, safety, and welfare.

The EMS provisions of the Code also created an EMS coordination committee with 25 voting members, which meets at least twice per year at meetings subject to the Michigan Open Meetings Act, Michigan Compiled Laws § 15.261. The committee's role is to act as a liaison between organizations and individuals involved in the EMS system, as well as providing MDPH with advisory recommendations on appeals of LMCA decisions.

TCEMCA was designated by MDPH as an authorized LMCA for Ingham, Eaton, and Clinton counties. TCEMCA's predecessor was Tri–County Emergency Medical Services Council, which was incorporated in 1970 pursuant to earlier Code provisions.

TCEMCA is organized as a non-profit corporation under Michigan law. It is governed by a board of directors, normally comprised of 12 to 14 members and 2 non-voting members. The by-laws for TCEMCA authorize the board to include the executive officers, or their designees, of the seven participating hospitals in the region; 3 authorized agency members from the agencies providing basic, limited advanced, or advanced mobile emergency care vehicles; 2 representatives from other health facilities or agencies such as clinical laboratories or nursing homes; 2 members representing consumers; and 2 non-voting members: the TCEMCA medical director and the TCEMCA coordinator.

Although the hospitals each have a representative on the TCEMCA board, the hospitals themselves do not otherwise participate in the administration of the TCEMCA, which is a totally separate and distinct entity from the hospitals in the region.

In 1991, 1992, and 1993, the TCEMCA assessed and collected agency participation fees from plaintiff LMAS. Defendants contend that "voluntary participation fees are collected by TCEMCA." Plaintiffs note that whether the fees levied were paid by plaintiffs voluntarily is not currently before this Court; only the question of whether a LMCA has authority to levy such fees is at issue.

Plaintiffs seek declaratory and injunctive relief in this action, not damages.[3] First, they seek a declaratory judgment that the delegation of governmental authority to the private entities that comprise the LMCAs violate the Fourteenth Amendment by wrongfully allowing plaintiffs' business to be regulated by their competitors and customers. They also seek an injunction against the enforcement of the EMS part of the Public Health Code, including the related rules, regulations, and protocols.

**3.** The defendant hospitals urge the Court to decline to entertain the present complaint, contending that it is merely a first step in plaintiffs' plan to bring a later claim for legal damages. Because plaintiffs are directly affected by and subject to the local medical control authority that is challenged as having been created and operated in a manner that is contrary to federal and state law, this Court finds that the action for declaratory judgment is appropriate and that the case is ripe for a decision.

Secondly, plaintiffs seek a ruling that the delegation of governmental authority to the LMCAs through the EMS portion, Part 209, of the Public Health Code and the promulgation of protocols applicable to the local geographic regions covered by the individual LMCAs violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution because the delegation and local rule-making allegedly violates the Michigan Constitution of 1963, Article IV, Section 29.

Finally, plaintiffs seek a ruling that the LMCAs do not have authority to impose or levy fees on licensees under Part 209 of the Public Health Code, and that the unauthorized fees, therefore, constitute deprivations of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

It should be noted that the complaint also alleges that defendants have violated the Michigan Freedom of Information Act, Michigan Compiled Laws §§ 15.231–.246 and the Michigan Open Meetings Act, Michigan Compiled Laws §§ 15.261–.275. As noted by defendants, although it asserts the alleged violations, the complaint does not request any relief relative to the violations. Furthermore, plaintiffs, in their motion for summary judgment, do not address the two alleged violations. Defendants mention the two alleged violations in their responsive brief and cross-motion for summary judgment, but explicitly do not take a position on the issues. Defendant TCEMCA, however, claims that it has acted in conformity with the two acts by being willing to provide requested information so long as it is not confidential and by advising the membership of meeting dates. The Court does not consider the two issues as being claims for relief and will not address them.

### Standard for Summary Judgment

■ In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir. 1982).

■ The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

■ A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989). On the other hand, the opponent has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *genuine issue for trial.*'" *Historic Preservation,* 896 F.2d at 993 (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

■ As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions encourage the granting of summary judgments where there are no material facts in dispute. *Historic Preservation,* 896 F.2d at 993 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ The courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). Consis-

tent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

## DISCUSSION

### Motions for Misjoinder

■ As an initial matter, the Court notes that the defendant hospitals sought a motion for misjoinder in mid–1993. This Court certified several questions to the Michigan Supreme Court as it was possible that certain state law questions which have not been clearly addressed yet by Michigan courts could have resolved most, if not all, of the issues in this case. Unfortunately, the Michigan Supreme Court, in March 1994, declined to answer the certified questions, as it has in all questions certified by this Court for 15½ years. Because the case is now ready for decision, with trial ready to begin, it serves little purpose to find that defendant hospitals were unnecessarily joined. Furthermore, because these hospitals are charged, pursuant to Michigan statute, with administering the Medical Control Authority at issue in this case, and were at least in part responsible for the fees that were assessed by the MCA and challenged by plaintiffs, I am not willing to find that the hospitals are not properly joined in this case. The motions for misjoinder are denied.

### Motion to Dismiss filed by Vernice Davis Anthony

■ It is noted that defendant Vernice Davis Anthony, Director of the Michigan Department of Public Health, filed a motion to dismiss early in this case, but has not filed a motion for summary judgment, unlike the remaining parties. The motion to dismiss was based upon a claim of Eleventh Amendment immunity. This motion asserted that because defendant Davis was sued in her official capacity, the claims against her were actually against the State of Michigan. De-

fendant Davis contends that the Eleventh Amendment, as interpreted by the Supreme Court, precludes finding that she is a "person" for purposes of a section 1983 suit.

As noted by plaintiffs, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and its progeny, have held that the Eleventh Amendment does not bar a suit for prospective injunctive relief when brought against a state official in her official capacity. *See Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The cases cited by defendant Davis in support of her motion state only that suits for monetary damages against state employees in their official capacities are barred. *See Will*, 491 U.S. 58, 109 S.Ct. 2304; *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Here, it is clear that plaintiffs seek prospective injunctive and declaratory relief, not damages. Consequently, the cases cited by defendant Davis do not support dismissal. Therefore, the motion to dismiss is denied.

### Cross–Motions for Summary Judgment

Defendant Davis (hereinafter referred to as "MDPH") has filed no other dispositive motions with this Court, apparently expecting this case to be settled or resolved at trial. Plaintiffs filed their motion for summary judgment in August 1994, and the remaining defendants filed a combination response and cross-motion for summary judgment in October 1994. In reviewing MDPH's brief in opposition to plaintiffs' motion, it is clear that its legal positions do not entirely parallel those of the remaining defendants. In any event, because there are virtually no disputed facts in this case, the resolution of the cross-motions for summary judgment filed by plaintiff and the remaining defendants will also resolve the claims against defendant MDPH.

### I. Federal Due Process Claim

Plaintiffs contend that the Public Health Code sections relating to emergency medical services (EMS) have unconstitutionally delegated authority to local Medical Control Au-

thorities (LMCAs) that consist of customers and competitors of plaintiffs' ambulance service. MDPH responds that the delegation was to private entities and that the LMCAs do not perform governmental functions. The remaining defendants agree with plaintiffs that the LMCAs are governmental agencies acting on behalf of the State and the Department of Public Health (MDPH). These defendants, however, contend that the delegation of governmental responsibilities to the LMCAs is not unconstitutional.

■ Regarding the nature of the LMCAs, the EMS part of the Public Health Code provides as follows:

Sec. 20910

(1) The department [of Public Health] shall do all of the following:

\* \* \* \* \* \*

(k) Designate a medical control authority [LMCA] as the medical control for emergency medical services for a particular geographic region as provided for under this part.

\* \* \* \* \* \*

Sec. 20919

(1) A local medical control authority shall establish written protocols for the practice of life support agencies and licensed emergency medical services personnel within its region. The protocols shall be developed and adopted in accordance with procedures established by the department and shall include all of the following:

(a) The acts, tasks, or functions that may be performed by each type of emergency medical services personnel licensed under this part.

(b) Medical protocols to ensure the appropriate dispatching of a life support agency based upon medical

need and the capability of the emergency medical services system.

\* \* \* \* \* \*

Mich.Comp.Laws Ann. §§ 333.20910 and .20919.

The MDPH is "responsible for the development, coordination, and administration of a statewide emergency medical services system." Mich.Comp.Laws Ann. § 333.20910(1)(a). However, supervision of emergency medical services is performed by the medical control authorities which are designated by the MDPH. Mich.Comp.Laws Ann. § 333.20906(4).

"Protocol" is defined in the EMS statute as a "patient care standard, standing orders, policy, or procedure for providing emergency medical services that is established by a medical control authority and approved by the [MDPH] under section 20919." Mich.Comp. Laws Ann. § 333.20908(7).

Ambulance operations, such as plaintiffs, are required to "operate in accordance with [Part 209], rules promulgated under this part [by the MDPH], and approved local medical control authority protocols and shall not provide life support at a level that exceeds its license or violates approved local medical control authority protocols." Mich.Comp. Laws Ann. § 333.20920(5). "Before issuing a renewal license [to an ambulance operation], the department shall determine that the ambulance operation is in compliance with this part, rules promulgated under this part, and local medical control authority protocols." Mich.Comp.Laws Ann. § 333.20920(6). "If the ambulance operation operates under a medical control authority, [it shall] operate only under the direction of that medical control authority." Mich.Comp.Laws Ann. § 333.20921(1)(c). Finally, "[a] person shall not establish, operate, or cause to be operated an ambulance operation unless it is licensed under this section." Mich.Comp. Laws Ann. § 333.20920(1).[4]

---

**4.** Plaintiffs also interpret the Public Health Code as providing for criminal penalties for violations of the protocols adopted by the LMCAs. Presumably, plaintiffs are referring to Michigan Compiled Laws § 333.20199, which provides that "... a person who violates this article or a rule promulgated or an order issued under this article is guilty of a misdemeanor, punishable by fine of

not more than $1,000.00 for each day the violation continues...." Whether this criminal provision applies to violations of protocols adopted by the LMCAs appears unlikely and is, at best, unclear. The Court has been unable to find any other applicable criminal sanctions. Plaintiffs have cited no provisions to support their purported concerns.

MDPH contends that the LMCAs are not performing governmental functions, but rather perform private activities that also happen to benefit the public. Plaintiffs propose the following definition of governmental function: "... an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross v. Consumers Power Co.*, 420 Mich. 567, 620, 363 N.W.2d 641 (1984). However, MDPH notes that *Ross* involved determining the scope of immunity under the governmental immunity act and explicitly used a very broad definition for that purpose.

Nevertheless, pursuant to the statutory mandate, the LMCAs are to supervise emergency medical services provided in their regions and establish protocols—meaning patient care standards, standing orders, policies, and procedures—for providing emergency medical services in their regions. Ambulance operators and other emergency service providers must comply with these protocols, just as they must comply with the EMS part of the Public Health Code, the rules promulgated pursuant to the EMS sections, and the duty to provide life support at levels that do not exceed their licenses.

Although it argues that the LMCAs do not perform governmental functions, MDPH, in its brief responding to the motions for misjoinder filed by the hospitals, stated that "[t]he role of the local medical control authority is to oversee and administer the ongoing emergency medical services solely within its geographic area. As a tool for achieving this, it adopts a set of protocols. The [LMCA], in drafting those protocols, addresses those matters which it considers to be essential in administering its functions. . . ."

The LMCAs, pursuant to statute (not pursuant to voluntary agreements with EMS providers) are mandated to develop and implement the standards and procedures to be followed by EMS providers within their regions. The LMCAs are required by the statute to supervise the EMS services provided in their regions. If an EMS provider violates the protocols, it may not be permitted to renew its license to operate, thus precluding it from continuing to provide

EMS service. It is clear to this Court that the functions performed by the LMCAs are governmental in nature, as it is regulating the provision of EMS in the region, not just developing better methods of providing services, and such regulation is mandated by Michigan statute, and its decisions and protocols have the force of law.

The remaining defendants, which have conceded that LMCAs are governmental agencies of the State, argue that the determination that the LMCAs are governmental does not, as contended by plaintiffs, mean that the LMCAs are unconstitutional. At oral argument, MDPH, at least in part, agreed that if the LMCAs were found to be governmental agencies, they were, nevertheless, still constitutional.

■ Where a delegation of legislative authority is made to a private organization composed of private actors that have a financial interest in the outcome of decisions made by the organization, such a delegation may violate the Due Process Clause of the Fourteenth Amendment. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *Suss v. American Society for the Prevention of Cruelty to Animals*, 823 F.Supp. 181, 188 (S.D.N.Y.1993). As noted by plaintiffs, subjecting their ambulance service business to regulatory decisions made by hospital participants in the TCEMCA, some of which are also engaged in providing emergency ambulance services that compete or could potentially compete with plaintiffs' business, raises a serious question concerning fairness, impartiality, and, accordingly, due process.

■ Where there are neutral safeguards to ensure that decisions by the privately staffed agency reflect disinterested determinations, the delegation of authority may be found to comply with the protections provided by the Due Process Clause. *See Simon v. Cameron*, 337 F.Supp. 1380, 1382 (C.D.Cal. 1970).

■ In the present case, the protocols proposed by the TCEMCA through its hospital participants are just that: proposals. Subsection 333.20919(2), requires that written drafts of proposed protocols be submitted

to all significantly affected persons within the system served by the particular LMCA proposing the protocol and be submitted to the MDPH for approval. The MDPH, according to the subsection, in determining whether to approve the protocol, is to consider any written comments received from interested persons and is to consider the proposed protocol's consistency with any other protocols on the same subject matter that were already established by other LMCAs. Obviously, plaintiffs, as affected persons, are among the group from whom comments are sought relative to protocols proposed by TCEMCA.

Exhibit A to the defendant hospitals' brief is replete with letters from the MDPH to TCEMCA notifying the latter of concerns about proposed protocols and requesting particular changes, more information, or greater detail in the language. Clearly, the MDPH in approving protocols proposed by the LMCAs is not limited to merely checking for consistency with other LMCA approved protocols. Although plaintiffs complain that there are no specific standards for the MDPH's review of protocols, the test is whether its review authority and involvement is sufficient to bring neutrality to the protocols proposed by TCEMCA. I find that the MDPH role is not merely to rubber stamp protocols proposed by LMCAs. In fact, according to plaintiffs, the TCEMCA has actually had very few protocols approved by the MDPH.

In addition, the MDPH has the authority to issue variances with respect to decisions that may be rendered by LMCAs, if that result is determined to be appropriate to protect public health, safety, and welfare. Mich.Comp.Laws § 333.20919(3). With respect to this review, the LMCA is required to make available its medical and economic information underlying the decision.

The experience of the LMCAs is instructive. Plaintiffs have failed to identify any protocols or actions on the part of the TCEMCA relating to emergency medical services that has unfairly treated them,[5] as opposed to other service providers. One TCEMCA action mentioned at the hearing, though not substantiated with any detail or in any document provided to the Court, is that certain training was required for all staff; such training was asserted to be unnecessary for LMAS employees, and relatively more difficult for its small company to absorb the extra expense as opposed to the hospitals. However, there is no indication that the training requirement had any motivation other than improved emergency medical care, and there is no evidence, other than an assertion by plaintiffs' counsel, that the training was, in fact, not necessary or beneficial to LMAS. Furthermore, if the training was the product of a protocol, LMAS was free to comment about the proposed protocol to the MDPH. In addition, LMAS could have appealed the requirement for training and, if dissatisfied, sought a variance from MDPH.

Although plaintiffs suggest that hospitals can exempt themselves from protocols, there is no statutory basis for this assertion. At best, if the hospitals determine that a proposed protocol ultimately should not be adopted, they remain free to decline to have the LMCA adopt the protocol, even if the MDPH approves of the protocol. Once the protocol is adopted, however, all of the service providers in the relevant geographic region are subject to it.

Finally, as noted by defendant MDPH, the TCEMCA or other LMCAs do not have authority to actually dispatch ambulance services to the scene of an emergency. Those responsibilities rest with the counties pursuant to Michigan Compiled Laws 484.1101–.1707.

There is no substantial showing that the statute has unconstitutionally delegated final authority to competitors of LMAS. The

---

**5.** The defendant hospitals suggest that plaintiffs and this Court may be entertaining a claim that antitrust laws may have been violated by the TCEMCA. This interpretation of the argument is misguided. Rather, the question is whether competitors of LMAS have been given unconstitutional authority over LMAS to impose regulations on LMAS. The inquiry concerning whether anti-competitive actions have actually occurred is merely an attempt to determine whether the TCEMCA, in fact, empowers competitors of LMAS to regulate LMAS in a manner that may be unfair, in a competitive sense, to LMAS.

means chosen for improving delivery of emergency medical services appears to have carefully balanced utilizing local understanding and expertise in providing such services with the close supervision of state authorities to ensure relative consistency in service delivery across the state and to ensure that rules and procedures adopted by the local authorities are acceptable in light of comments by affected persons. Summary judgment in favor of defendants is appropriate on this issue.[6]

## II. Violation of Michigan Constitution of 1963, article 4, section 29

The complaint characterizes its Second Claim for Declaratory Relief as alleging a violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. However, the claim is that the Michigan Constitution, article 4, section 29, precludes the delegation of authority to the LMCAs and the establishment of binding protocols by the LMCAs because they constitute local acts that were not properly passed. Section 29 provides as follows:

> The legislature shall pass no local or special act in any case where a general act can be made applicable, ... No local or special act shall take effect until approved by two-thirds of the members elected to and serving in each house and by a majority of the electors voting thereon in the district affected....

■ Whether the EMS portion of the Public Health Code constitutes a "local or special act" subject to section 29 is a question of state law, not federal law. Whether a "general act can be applicable" is also a question of state law interpretation.

Although none of the parties has argued the issue, this particular claim is, in reality, an issue solely of state law. "A violation of state law alone is not a denial of due process, even if state law confers a procedural right." *Osteen v. Henley,* 13 F.3d 221 (7th Cir.1993); *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667 (3d Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). In *Evanston Ins. Co., Inc. v. Merin,* plaintiffs challenged the establishment of a Property Liability Insurance Guaranty Association that was established by New Jersey's Property Liability Insurance Guaranty Act to investigate and pay claims of insureds whose insurers had become insolvent. 598 F.Supp. 1290, 1298 (D.N.J.1984). After finding that the legislature's choice of how to delegate its power in light of the New Jersey State Constitution is a matter of state law, absent any independent violation of the United States Constitution, the court held that it had no authority to order injunctive or declaratory relief against state officers solely on the grounds of state law. *Id.* at 1311 (citing *Highland Farms Dairy v. Agnew,* 300 U.S. 608, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937); *Pennhurst State School v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

■ As in *Evanston,* the claim that the EMS statute violates the provisions of the Michigan Constitution is a question of state law. The violation of the Michigan Constitution does not also independently violate federal rights, including the due process clause. In addition, the state constitutional claim depends entirely upon finding that the Michi-

---

6. On pages 5 to 9 of its brief, plaintiffs assert that the Michigan Administrative Procedures Act (MAPA) is applicable to TCEMCA as a state agency, and that, therefore, TCEMCA's handling of rule-making and decision-making procedure in handling contested situations does not comply with the MAPA. *See* Michigan Comp.Laws § 24.201, *et seq.* MDPH acknowledges that the LMCAs are not required to comply with the MAPA. It repeats its contention that the LMCAs are non-governmental, but also notes that the EMS statute provides for a detailed procedure with respect to protocol-making and a procedure concerning appeals of decisions that are clearly inconsistent with MAPA. This Court finds that

this basis for the declaratory judgment has not been adequately pled in the complaint; consequently, the Court refuses to reach the issue. Furthermore, although raised as supposedly actionable under 42 U.S.C. § 1983, the issue appears to raise a claim under state law. Finally, although the Court agrees that the LMCAs are, at least in part, governmental in nature, due to their authority to adopt procedures and rules in the form of protocols that must be followed by EMS providers, the MDPH's contention that the language of the EMS statute, though not specifically exempting LMCAs from the MAPA, has clearly included procedures that were intended to displace the MAPA with respect to the MAPA.

gan Constitution was violated, and if that determination is made, the EMS part of the Act relating to the LMCAs would be rendered void, and no federal constitutional analysis would be necessary.

■ Clearly, although labeled a federal claim, the Second Claim for Declaratory Relief is based solely on state constitutional law. Consequently, this Court's jurisdiction, if exercised, is supplemental to its jurisdiction over the federal claims discussed above. This Court can refuse to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). I believe defendants are probably correct that the statutory provisions relating to the LMCAs and the protocols adopted by the LMCAs following approval by the MDPH probably are not the type of "local acts" that were intended to be subject to the state constitutional provision. However, as noted by defendants in their brief seeking abstention (dkt. # 22), at pages 10–11, the statute and State Constitution could potentially be interpreted as being in conflict.

■ Michigan courts have not addressed the issue, which is why this Court certified the question to the Michigan Supreme Court. It is a novel, perhaps complex, issue of state law. Accordingly, this Court declines to exercise supplemental jurisdiction over the question and will dismiss the Second Claim without prejudice. Furthermore, even if this claim could be considered to raise a federal due process claim, abstention is appropriate because there is an unclear state law, the resolution of which would obviate the need for deciding the federal constitutional question. *See Tyler v. Collins,* 709 F.2d 1106, 1108 (6th Cir.1983) (citing *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). Therefore, even if the Second Claim for Relief stated a federal cause of action, this Court would abstain from deciding the issue and dismiss the claim on that basis.

## III. Fees Charged by Defendant TCEMCA

■ As noted by plaintiffs, the EMS statute provides no express authority for the LMCAs to levy taxes. As acknowledged by MDPH, such express authority is needed in order for a state-created government agency to levy taxes or fees. *Acorn Iron Works v. Auditor General,* 295 Mich. 143, 150, 294 N.W. 126 (1940); *Consolidated Paper Co. v. Nims,* 306 Mich. 216, 10 N.W.2d 833 (1943).

■ Defendant TCEMCA does not assert that it has a right, either expressed or implied, to collect taxes or otherwise impose mandatory fees on EMS service providers. Instead, it denies that it imposes a mandatory fee, insisting that the participation fees requested from EMS services providers, including plaintiff LMAS, are voluntary. As the parties note, the Articles of Incorporation of TCEMCA specify that it is to be financed by "voluntary contributions." [7]

It is clear that TCEMCA has "assessed" fees against service providers, including plaintiff LMAS, during 1991, 1992, and 1993. Plaintiff LMAS has refused to pay the 1993 assessment, but apparently paid the previous assessments. The complaint does not request this Court order the return of such payments; but merely asks for a declaration that mandatory fees cannot be charged. TCEMCA insists that although an assessment is provided to service providers, there is no requirement that the fee be paid. It notes that no membership suspensions ever resulted from a failure to pay the fee assessments.

Clearly, TCEMCA has no authority to charge mandatory fees or taxes to EMS providers. There is sufficient evidence to warrant clarifying the law. However, because TCEMCA has affirmatively represented that the fees it imposes are merely voluntary, with no negative consequences following a refusal to pay, there is no basis for issuing an injunction.

---

7. The minutes of an August 17, 1994 TCEMCA board meeting mentioned participation dues that were delinquent, noting that once the above-captioned case is settled, "all delinquent dues will be enforced as due and payable immediately." Clearly, the minutes indicate that TCEMCA considers the payment of dues to be mandatory.

## CONCLUSION

For the foregoing reasons, summary judgment is granted to defendants on the first cause of action, which concerns whether the EMS statute's delegation of authority to LMCAs with respect to emergency medical services are violative of the Fourteenth Amendment. The Court refuses to exercise pendent jurisdiction on the novel state claim raised in the second cause of action. Finally, concerning the third cause of action, summary judgment is granted to plaintiff on the issue of whether TCEMCA may charge mandatory fees or otherwise tax plaintiffs. MDPH's motion to dismiss is denied as is the motion to dismiss on the basis of misjoinder that was filed by the defendant hospitals.

## *JUDGMENT*

In accordance with the Opinion entered this date;

**IT IS HEREBY ORDERED** that defendant Vernice Davis Anthony's motion to dismiss, filed March 12, 1993 (dkt. # 4), is **DENIED;**

**IT IS FURTHER ORDERED** that the motions for misjoinder, filed by the various defendant hospitals on July 8, 1993 and July 12, 1993 (dkt. ## 33 and 34), are **DENIED;**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment, filed August 19, 1994, (dkt. # 63), is **GRANTED in part** and **DENIED in part;**

**IT IS FURTHER ORDERED** that with respect to the third cause of action in the complaint, the imposition of mandatory fees or other taxes on plaintiffs by defendant Tri–County Emergency Medical Control Authority, Inc., is without express authority by statute, and is contrary to the Fourteenth Amendment of the United States;

**IT IS FURTHER ORDERED** that the cross-motion for summary judgment filed by defendant Tri–County Emergency Medical Control Authority, Inc. and the defendant hospitals on October 14, 1994 (dkt. # 69), is **GRANTED in part** and **DENIED in part;**

**IT IS FURTHER ORDERED** that with respect to the first cause of action in the complaint, the delegation of authority to local medical control authorities by the Michigan Department of Public Health and pursuant to Part 209 (EMS portion) of the Michigan Health Code does not violate the Fourteenth Amendment to the United States Constitution;

**IT IS FURTHER ORDERED** that with respect to the second cause of action, this Court declines to exercise pendent jurisdiction and abstains from deciding whether the Michigan Constitution prohibits the enactment of the EMS statute that delegated authority to an agency to adopt local rules on the basis of the fact that the Michigan Legislature did not pass the statute by a 2/3 vote and no vote was held in the local districts affected.